STATE OF NEBRASKA, APPELLEE, v. DON BRODRICK, APPELLANT.

205 N. W. 2d 660

Filed March 30, 1973. No. 38615.

Harris W. Snyder, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

The defendant was charged with unlawful sale, delivery, and distribution of amphetamine sulfate, a controlled substance. He was found guilty of unlawful possession of a controlled substance. He appeals from a sentence of imprisonment for 1 year. The principal controversy concerns the overruling of a motion to suppress the results of a scientific test.

The evidence shows the defendant and a number of other people participated in a party at Wanda's Cafe in Chadron, Nebraska, on the night of February 12-13,

1972. There was testimony the defendant had in his possession two plastic sandwich bags containing a number of pills or tablets. A witness who had been granted immunity testified the defendant gave him four tablets described as "speed" from one bag and another tablet described as "acid" from the other bag. The witness took three tablets home with him the next day. He gave one to his sister and hid the other two in his room. His mother discovered the pills and delivered them to the county attorney.

An analysis by a State chemist on February 18, 1972, disclosed the "speed" tablet contained dl-amphetamine sulfate. The other tablet is not involved in this case. A witness for the State testified that he took one of each type of the tablets but had no reaction from either one.

On April 10, 1972, the defendant moved for a discovery order to permit him to have an analysis made of the substance described in the information. The State could not produce any part of the tablet because it had been destroyed during the analysis made by the State chemist. The defendant then moved to suppress the testimony of the State chemist which motion was overruled.

The amphetamine or "speed" tablet which was analyzed was approximately 4 to 5 millimeters in diameter and about the thickness of a dime. It did not appear to have been of commercial origin.

The State chemist who performed the analysis testified that he performed four tests on the tablet. The first test was a spot test. The tablet was ground into powder and a small portion of the powder was added to five or six different reagents in porcelain dishes. The resulting colors gave some indication of the chemical composition of the tablet.

The second test was a crystal test. Different reagents were added to portions of the powdered tablet and the resulting crystals were examined under a microscope.

The third test was an ultraviolet spectrophotometer

test. The remaining powder was dissolved in water, the solution filtered, and then placed in an instrument and subjected to ultraviolet rays. The chemical composition of the solution was indicated by the absorption peaks.

The fourth test was an infrared spectrophotometer test. The water was extracted from the solution used in the third test and the resulting precipitate combined with potassium bromide to make a clear pellet. The pellet was then examined in an instrument which produced a tracing or "fingerprint" of the drug. At the conclusion of the test the pellet was discarded.

Section 29-1913 (2), R. S. Supp., 1972, provides: "If the evidence necessary to conduct the tests or analyses by the defense is unavailable because of the neglect or intentional alteration by representatives of the state, other than alterations necessary to conduct the initial tests, the tests or analyses by the state shall not be admitted into evidence."

There was no evidence in this case of intentional alteration other than alteration necessary to conduct proper tests on the substance in question. There was, however, evidence of neglect by representatives of the State which resulted in the substance being unavailable for analysis by experts selected by the defendant.

The State chemist testified the pellet would have remained stable for several months and could have been subjected to an infrared spectrophotometer test by another chemist. Also it was possible the remaining substance could have been extracted from the pellet and subjected to other tests. The situation is complicated by an additional circumstance. The county attorney had called the State chemist who performed the tests and requested that a part of the tablets be preserved if possible. The chemist testified that before the tests were started the county attorney had requested him to save a part of the tablets if he could, but at the end of the tests he discarded the pellet.

Under the circumstances in this case, the motion to

suppress should have been sustained. It is unnecessary to discuss the other assignments of error.

The judgment of the District Court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.