Ortrud S. LAPENNA, Rodney
Jason Lapenna

v.

The UPJOHN COMPANY and Union
Carbide Corporation.

Civ. A. No. 82–4050.

United States District Court,
E.D. Pennsylvania.

Jan. 3, 1986.

Walter C. Ward, Miami, Fla., Joseph P. Moschetta, Washington, Pa., and Paula L. Stone, Bala Cynwyd, Pa., for plaintiffs.

Thomas M. Kittredge, Philadelphia, Pa., for Upjohn Co.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Plaintiffs' complaint, filed September 16, 1982, alleges that plaintiffs' decedent, Carmen A. Lapenna, died as a result of an intrathecal injection of Depo-Medrol, a product manufactured by the Upjohn Company. During an April 22, 1985, conference call, I stressed that with the exception of limited discovery required by a February 20, 1985, order, counsel should be ready, and proposed listing the case for trial during the summer. For various reasons not pertinent to this discussion, plaintiffs' counsel requested a delay until late fall. Notwithstanding counsel's protestations, I entered an order advising counsel that they would be specially listed to start trial on July 8, 1985. This order also provided for a June 20, 1985, conference call to allow a discussion of final trial preparations.

On June 19, 1985, plaintiffs filed a motion to extend the discovery period. During the conference call the next day, plaintiffs' counsel argued that the trial date must be put off because he had recently learned that Upjohn had obstructed the discovery process by instructing witnesses not to answer questions and by failing to disclose properly-requested information. Counsel argued that because he was now uncertain as to the completeness of Upjohn's responses, he would have to seek discovery from the Food and Drug Administration (FDA), a process that was asserted to involve a substantial amount of time. Upjohn objected vehemently to both the accusations that were being leveled against it and also to a continuance of either the trial date or discovery. I stayed the trial of the matter and ordered plaintiffs to file a motion setting forth with particularity the ways in which Upjohn had failed to comply with their discovery requests and describing the relief they believed was appropriate.

Presently before me is this motion—which plaintiffs have styled as a motion to compel—and defendant's response. For reasons that follow, plaintiffs' motion will be granted in part and denied in part.

■ The scope of plaintiffs' motion requires preliminary observation: the motion discusses purported discovery abuses and shortcomings dating back almost to the filing of the case. In evaluating plaintiffs' assertions, therefore, I must distinguish between complaints that have been timely brought and those which plaintiffs have allowed to stand idle until now. While Rule 37 contains no outside limit on the time within which a motion to compel discovery must be made, a court may impose a reasonableness requirement to prevent delay and harassment and to allow for calendar control. *See* 4A J. Moore, J. Lucas & D. Epstein, *Moore's Federal Practice,* ¶ 37.02[6], at 43–44 (2d ed. 1984). *See also Price v. Maryland Cas. Co.,* 561 F.2d 609, 611 (5th Cir.1977).

■ Two examples of plaintiffs' tardiness spring to the forefront. Plaintiffs complain about the fact that an employee of Upjohn, John Crim, was not produced for the deposition noticed by plaintiff for February 28, 1984. *See* Plaintiffs' motion to compel at 6; Memorandum in support of motion to compel at 5 n. 4. Plaintiffs acknowledge that Upjohn took the position that Crim should not be produced because, as a member of Upjohn's legal department, his testimony would be shielded by the attorney-client privilege or the work-product doctrine. *See, e.g.,* Memorandum in support of motion to compel at 5 n. 4. However, plaintiffs failed to challenge Upjohn's privilege assertions until now, some 16 months afer they were made. This is especially disingenuous in light of the fact that plaintiffs previously raised contemporaneous complaints about other Upjohn objections that were lodged during the deposition of Dr. Samuel Stubbs, who was noticed to be deposed with Crim.

■ In a slightly different vein, plaintiffs complain about defense counsel's instructing Dr. Stubbs not to answer questions at his deposition. *See* plaintiffs' motion to compel at 7, 21. As counsel well knows, however, the limitations defense counsel placed on Dr. Stubbs' testimony were brought to my attention immediately following the Stubbs deposition. I ordered plaintiffs' counsel to provide me with a transcript of the Stubbs deposition and an itemization of unanswered questions. *See* Loc.R.Civ.P. 24(b). After considering the contentions of both parties, I ordered Upjohn to produce employees to testify regarding three subject areas. Notably, a substantial number of the questions about which plaintiffs now complain were not included in plaintiffs' itemization. *Compare* Letter from Walter C. Ward, Esquire, to the court at III.5 (itemization letter) (complaining about instructions not to answer found at pages 66, 107, 110–11 of the Stubbs' transcript) *with* plaintiffs' motion to compel at 7 (complaining about instructions not to answer found at pages 60, 67, 81, 96–97, 107, 111, 118, 176, 184–85, 210, 219, 221, 223, 224, 246, 272, 344, 345, 354 of the Stubbs' transcript). I had provided plaintiffs with not only an opportunity but an invitation to air grievances stemming from the Stubbs deposition. For some reason, plaintiffs elected not to use that invitation to pursue some of the claims that they are pursuing now. To the extent plaintiffs are presently seeking answers to questions asked of Dr. Stubbs but not listed in the itemization, they have waived the right to judicial consideration of the merits of their complaints. To hold otherwise would be to encourage piecemeal pre-trial proceedings. With regard to those questions that are included in both the itemization and the motion to compel, plaintiffs' contentions were carefully considered prior to my issuing the February 20, 1985, order. If plaintiffs were dissatisfied with that order, they certainly could have moved for reconsideration as provided by Rule 20(g) of the Local Rules of Civil Procedure.

Accordingly, the claims that I will consider timely brought are those pertaining to the recent depositions of Upjohn employees and those asserting that Upjohn obstructed

discovery by misleading plaintiffs as to the completeness of its response to requests for production and interrogatories.

The contentions surrounding the recent depositions, in turn, subdivide into two categories. The first category consists of plaintiffs' complaints that Upjohn's counsel improperly instructed the deponents not to answer several questions. The second category encompasses plaintiffs' claim that in response to questions whether they had knowledge of, or responsibility for a particular fact, procedure, or decision, the deponents often either answered the question by stating that they could not remember or by shifting responsibility to another employee.

In determining whether to compel Upjohn to answer questions that several of its employees were instructed not to answer, I will review only those questions that have been specifically identified by plaintiffs in their moving papers. *See* Loc.R.Civ.P. 30(b).

Rule 30(c) of the Federal Rules of Civil Procedure provides that evidence objected to at a deposition shall be taken subject to the objection. A bright-line exception to this rule has been fashioned where the objection is based on privilege, because disclosure would undermine the protection afforded by the privilege and would constitute a waiver of the privilege. *See Eggleston v. Chicago Journeymen Plumbers' Local Union*, 657 F.2d 890, 902 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *Preyer v. United States Lines, Inc.*, 64 F.R.D. 430 (E.D.Pa.1973), *aff'd*, 546 F.2d 418 (3d Cir. 1976).

There is a conflict of authority, however, concerning the propriety of instructing a witness not to answer where the basis of the objection is other than a claim of privilege. *See generally Shepard's Discovery Proceedings in Federal Practice* § 6.28, at 54–55 (1983). One view is that an attorney's instruction not to answer is highly improper: counsel's appropriate course of action is either to note the objection on the record and allow the answer or to move for

a protective order pursuant to Fed.R.Civ.P. 30(d). *See, e.g., Ralston Purina Co. v. McFarland*, 550 F.2d 967 (4th Cir.1977); *Coates v. Johnson & Johnson*, 85 F.R.D. 731 (N.D.Ill.1980); *Shapiro v. Freeman*, 38 F.R.D. 308 (S.D.N.Y.1965). These courts reason that efficiency requires a witness to answer an objectionable question because the prejudice resulting from answering is far outweighed by the risk that another deposition may have to be convened to have the witness answer a question to which an improper objection had been lodged. *See Coates*, 85 F.R.D. at 311–12; *United States v. International Business Machines Corp.*, 79 F.R.D. 378, 381 (S.D.N.Y.1978).

Other courts take the view that a deponent need not answer if the objection is that the question is irrelevant, argumentative, or misleading. *See In re Folding Carton Antitrust Litig.*, 83 F.R.D. 132 (N.D.Ill.1979); *Kamens v. Horizon Corp.*, 81 F.R.D. 444 (S.D.N.Y.1979).

I believe the appropriate approach to this problem is the one advocated in *Eggleston v. Chicago Journeyman Plumbers Local Union*, 657 F.2d 890, 902–03 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). The *Eggleston* court stated,

Rule 30(c), Fed.R.Civ.P., says the evidence should be taken subject to objection. Some questions of doubtful relevancy may be innocuous and nothing is lost in answering, subject to exception, except time. That is the general rule. Other irrelevant questions, however, may unnecessarily touch sensitive areas or go beyond reasonable limits.... In such an event, refusing to answer may be justified. *In re Folding Cartons* does not condone wholesale refusals, but displays thoughtful flexibility in limited instances. There is no more need for a deponent to seek a protective order for every question when a dispute arises than there is need to seek a motion to compel an answer for each unanswered question. If a particular question is important or opens up a whole area of questionable relevance, or other serious problems develop

which counsel cannot resolve themselves, then resorting to the court may be necessary. *Id.* at 903 (citing *In re Folding Cartons Antitrust Litigation*, 83 F.R.D. 132 (N.D. Ill.1979)).

■ Against this background, I note that the sheer number of questions to which counsel objected and instructed the deponents not to answer suggests that counsel should have allowed an answer or sought a ruling or discovery conference. Nonetheless, it would be a waste of time and effort for me to require a witness to answer a question that I find properly objectionable simply because counsel improperly instructed the witness not to answer. Rather, it would be more appropriate to impose on defense counsel the cost of re-deposing a witness if I find counsel's objections to have been without merit.

Plaintiffs object to Dr. George Ishler's being instructed not to answer several questions. Two questions raise essentially the same issue. Plaintiffs complain that counsel instructed Dr. Ishler not to answer the question: "What was the purpose of the change [in the package insert] from Upjohn's standpoint?" Deposition of George H. Ishler at 71. Plaintiffs also object to the instruction not to answer the following: "Upjohn was attempting to convey through this drug insert, the package insert, that Depo-Medrol was not to be used intrathecally, were they not?" *Id.* at 73. As a basis for objection to both questions, Upjohn stated that the witness could not talk about Upjohn policy; he could only talk about what he knew. *Id.* at 71-73.

■ In connection with deposing a corporation or other legal entity, Professors Wright and Miller observe, "Obviously, it is not literally possible to take the deposition of a corporation; instead, where a corporation is involved, the information sought must be obtained from natural persons who can speak for the corporation." 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 371 (1970). The problem of identifying an opponent corporation's spokesman on a particular point

has been greatly diminished with the adoption of Fed.R.Civ.P. 30(b)(6), which in effect places the onus for identification on the corporation. When a corporation produces an employee pursuant to a Fed.R.Civ.P. 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions. *See, e.g., Kendall v. United Air Lines, Inc.*, 9 F.R.D. 702 (S.D.N.Y.1949). *See also* 4 J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 26.56[3], at 142–43 (2d ed. 1984).

■ The party deposing a corporate employee has a more difficult problem, however, where, as here, the employee has not been produced pursuant to Rule 30(b)(6), and a subjective belief of the corporation is sought. Before compelling such a witness to testify regarding the subjective beliefs of the corporation, a court should first be satisfied that the employee has the requisite knowledge and authority to make an accurate statement. *Cf. Rodrigues v. Hrinda*, 56 F.R.D. 11, 13 (W.D.Pa.1972); *Moran v. Pittsburgh-DesMoines Steel Co.*, 6 F.R.D. 594, 596–97 (W.D.Pa.1949).

■ In this case, defense counsel lodged an objection as to form which, if plaintiffs' counsel had heeded, would have allowed for exploration of whether the deponent had the adequate foundation to answer the question. Moreover, it is clear from further testimony that Dr. Stubbs, not Dr. Ishler, was the person best able to render this type of corporate opinion. Furthermore, this same testimony makes it clear that counsel's question was indeed answered, thus raising the question as to why plaintiffs are pursuing an order compelling this discovery. Dr. Ishler testified that the person best able to testify about Upjohn's policy in placing new language in the package insert was Dr. Stubbs, Deposition of George H. Ishler at 72, and Dr. Stubbs testified that the language was placed in the insert at the behest of the FDA. Deposition of Samuel Stubbs at 77. Conse-

quently, I will not require Dr. Ishler to answer these questions.

■ Similar difficulties are inherent with the question to Dr. Ishler of whether the language "not for intravenous use" and "not recommended for intravenous use" are, "as far as the company is concerned, on equal footing...." Deposition of George H. Ishler at 149. Dr. Ishler had testified that as far as he was concerned they were equivalent and there is insufficient evidence that he was authorized to speak as to Upjohn's position on the equivalence of the language.

■ Plaintiffs next complain that Dr. Ishler was instructed not to answer the following questions: 1) "[W]ould you have the opinion that any time a drug is used outside the package insert indications column that it's a misuse of the drug?" 2) [F]rom your standpoint if a drug is being used outside the package insert is this a misuse of the drug?;" and 3) "If you get a report that a drug has been used outside the indications in the package insert is that a misuse of the drug?" Deposition of George H. Ishler at 116, 117.

In its brief in opposition to the motion to compel, Upjohn relies on *Williams v. Thomas Jefferson Univ.*, 54 F.R.D. 615 (E.D.Pa.1972), where the court refused to compel opinion answers to questions that were either based on facts not in the record or that were so broad that they would have "called for an answer that could amount to a treatise." *Id.* at 616. The breadth of these questions is similarly troubling; there has been no attempt to tailor them to the facts or products involved in this case. Any answer to the question would have been so broad that needless time would have been wasted in bringing the inquiry to the appropriate focus. Consequently, Dr. Ishler will not be required to answer these questions.

■ The next instruction about which plaintiffs complain is based on a question that has a number of problems. Dr. Ishler was asked, "Doctor, if it were not for the FDA activities as they relate to the intra-

thecal use of Depo-Medrol would this drug now be in use for that purpose sanctioned by Upjohn?" Deposition of George Ishler at 88. First, it is unclear precisely what counsel was asking. Assuming counsel wanted to know if Upjohn would have authorized Depo-Medrol but for certain FDA activities, there is insufficient evidence that Dr. Ishler would have the authority to answer such a question. More importantly, the assumption which plaintiffs' counsel wanted the deponent to make has no basis in fact and any opinion would be sheer speculation. *See Williams*, 54 F.R.D. at 616; *Rodrigues v. Hrinda*, 56 F.R.D. 11 (W.D.Pa.1972); *Anderson v. United Air Lines, Inc.*, 49 F.R.D. 144 (S.D.N.Y.1969); 4 J. Moore, J. Lucas & G. Grotheer, *supra* ¶ 26.56[3], at 143 & n.n. 19 & 20. The speculative nature of plaintiffs' question of whether Dr. Ishler believes that Depo-Medrol should be approved for intrathecal administration makes it similarly objectionable.

■ Dr. Ishler was also asked questions about whether he had held any discussions with anyone concerning previous testimony in the case. Deposition of George Ishler at 83. Defense counsel objected to the extent that the question included conversations with counsel. *Id.* While the answer "yes" or "no" to the question of whether the deponent conferred with counsel may itself not have been protected by the attorney-client privilege, further inquiry into the substance of the communication may well have been barred by the privilege. If the privilege did apply to conversations with counsel the question, therefore, would not have been reasonably calculated to lead to the discovery of admissible evidence.

Unfortunately, I have no information concerning the circumstances surrounding a communication between Dr. Ishler and counsel in this regard. While Upjohn has not satisfied its burden of establishing the applicability of the attorney-client privilege, *see International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88 (D.Del.1974), I will not blindly compel it to produce Dr. Ishler,

unmindful of two factors: first, the likelihood that the privilege would cover this situation; and, second, the fact that plaintiffs have not specifically requested this question to be answered. In the event plaintiffs wish to compel Dr. Ishler to answer the question, they shall submit a motion to compel this answer. If defendant wishes to attempt to establish the applicability of the privilege, it shall respond to this motion by affidavit.

The same reasoning is applicable to the question regarding Dr. Ishler's "current knowledge on the Lapenna case," Deposition of George H. Ishler at 85, and the procedure just outlined will be followed for his question as well.

 Plaintiffs' complaint that counsel instructed Dr. Ishler not to give his opinion whether wording in the package insert might diminish Upjohn's liability is groundless. Dr. Ishler's opinion in this matter is of doubtful relevancy and not likely to lead to the discovery of admissible evidence. Moreover, while counsel instructed the witness not to answer, an answer was nonetheless given. *See id.* at 134. Similarly, Dr. Ishler answered, over objection, plaintiffs' questions concerning discussion about the legal ramifications of changing the package insert. *Id.* at 147. Also substantially answered were plaintiffs' questions concerning the FDA's expectations regarding Upjohn's monitoring of publications discussing Upjohn products, *id.* at 113–15, and the three questions pertaining to Dr. Ishler's opinion on whether Depo-Medrol should be either used or marketed for intrathecal administration.[1] *See id.* at 898–1.

 Plaintiffs asked, "In your experience, ... does the FDA largely try to accomodate the drug companies whenever possible when it relates to getting a drug to market?" *Id.* at 150. This question is not only overbroad, but it is not reasonably calculated to lead to the discovery of admissible evidence.

 Defendant will, however, be required to produce Dr. Ishler for a telephone deposition pertaining to the question of whether, in Dr. Ishler's opinion, the FDA would have objected to the language, "do not use intrathecally." The question is reasonably focused and inquires only as to Dr. Ishler's opinion, based on his experience with the FDA. While Dr. Ishler's present opinion may be irrelevant, it may lead to the discovery of an opinion held by an Upjohn employee at a time period that may be pertinent to the negligence claim. Costs associated with the deposition shall be absorbed by Upjohn.

Plaintiffs next complain that Dr. William S. Barry was instructed not to answer twelve questions. All but two of these questions were well outside the scope of my February 20, 1985, order. I have stressed to counsel for a substantial time that I believe the parties have clearly transgressed the bounds of reasonable discovery. Defendant moved for a protective order after plaintiffs noticed the deposition of several employees. Plaintiffs countered defendant's motion by complaining that they had been deprived of necessary information. Prior to this time plaintiffs had obtained a vast amount of information through review of Upjohn's files, deposing Dr. Stubbs, and pursuing other discovery. My February 20, 1985, order protected Upjohn from being subject to further discovery, except that Upjohn was compelled to produce the individuals most competent to testify in three discrete areas. Plaintiffs' asking me to compel discovery in an area I have already excluded from further inquiry is difficult to understand, and I will not compel the production of information that goes beyond the order.

Two questions to Dr. Barry arguably fall within the scope of the February 20, 1985, order. These questions each pertain to plaintiffs' ability to evaluate Dr. Barry's other testimony. First, plaintiffs complain

---

1. While these three *particular* questions were not answered, Dr. Ishler had testified that he did not think that one should use Depo-Medrol intrathecally. Deposition of George H. Ishler at 80.

that counsel instructed Dr. Barry not to answer a question concerning a prior case in which Dr. Barry had been deposed. Deposition of William S. Barry at 33. This complaint is groundless because Dr. Barry responded to the question, despite counsel's objection. *Id.* Second, plaintiffs object to the instruction not to answer the question, "What have you been told about the Lapenna case?" *Id.* at 139. During the deposition, plaintiffs' counsel stressed that the question included information from counsel. *Id.* An answer to this question, as with several of the questions posed to Dr. Ishler, is almost certainly shielded by the attorney-client privilege. Nonetheless, if plaintiffs want to compel an answer to this question they may file a motion and defendant will be provided an opportunity to offer an affidavit in support of its privilege assertion.

Plaintiffs final complaint about an instruction not to answer pertains to questioning of Dr. John J. Clark as to whether he knew why he had received from counsel a copy of a 1964 test memorandum. Again, this communication is almost certainly shielded by the attorney-client privilege. The previously-described procedure shall be utilized if plaintiffs wish to compel an answer.

Plaintiffs also contend that the witnesses' performances at the recent depositions were unsatisfactory in that they often either could not remember the answers to a question, or absolved themselves of responsibility for a particular decision by shifting it to another employee who, in turn, claimed that responsibility had lain with the original deponent.

■ Plaintiffs expend considerable effort rehashing their dissatisfaction with the ability of Dr. Stubbs to answer their questions. While these contentions have been addressed in the February 20, 1985, order, it must be stressed that Dr. Stubbs was deposed after Upjohn had named him pursuant to plaintiffs' request to identify "*the* official, employee, or person" best able to testify about testing of Depo-Medrol at the animal and lab stages, the IND stage, and the NDA stage. *See* Plaintiffs' Interrogatories ¶ 3.(h) (emphasis added). Plaintiffs, in effect, wished to depose the single person at Upjohn who could best testify about all testing of the drug, dating back from its conceptualization in the 1950's until the present but now complain that the person Upjohn identified did not have specific information about every subject. Dr. Stubbs did not begin his association with Depo-Medrol until after the drug had been approved by the FDA; it is therefore not surprising that Dr. Stubbs could not discuss the pre-approval laboratory testing. Dr. Stubbs did, however, provide a great deal of insight into the development and use of the drug, and, on the record before me, I cannot say that Upjohn committed some sort of discovery abuse in naming him in response to plaintiffs' interrogatory.

Moreover, in October, 1983, Upjohn had identified Dr. R.S. Schreiber, a retired employee, as the person responsible for the animal and laboratory testing of Depo-Medrol. Answers to Plaintiffs' Interrogatories ¶ 3.(g). Because Dr. Schreiber was retired, he did not have to be produced by Upjohn pursuant to Rule 30(b)(6). Plaintiffs knew about Dr. Schreiber and his employment status for almost two years before this motion was filed. Since Upjohn gave plaintiffs notice about this source of information well within the discovery period, it strains the imagination that plaintiffs are complaining that Upjohn has obstructed access to this information.

Plaintiffs' complaints about the deposition performance of Dr. John J. Clark must be viewed similarly. Dr. Clark was produced as the Upjohn individual best able to testify about animal and laboratory testing of Depo-Medrol. He, however, was unable to testify about either the pre-approval testing of the drug or a 1963 dog study, although he was able to testify at great length about a 1961 dog study. As previously stated, Upjohn had identified Dr. Schreiber as the person responsible for pre-approval testing of Depo-Medrol. Furthermore, Upjohn had made available the re-

sults and names of the authors for the 1963 study.

Plaintiffs also complain about Dr. Barry's inability to remember certain adverse drug reaction reports pertaining to intrathecal use of Depo-Medrol. While Dr. Barry could not remember each report he was shown, he could testify generally about the reporting procedure and gave his present impression about what language in the reports probably meant. It is not altogether surprising that Dr. Barry could not recall certain 1979 and 1980 drug reaction reports in light of his testimony that 5,000 drug experience reports were processed through his group each year. Deposition of William Barry at 148.

Plaintiffs somewhat understandably are frustrated that due to retirement, death, or faded memory, Upjohn, through its employees, could not answer certain questions. However, retirement, death, and faded memory are natural products of the passage of time and not the basis of a bad-faith allegation. The problem is one of which plaintiffs should have been aware: a certain level of retirement, death, or memory loss must be expected when specific information, or general information as old as 25 years is sought from a corporation. Plaintiffs have known the names of former Upjohn employees and could have taken their depositions had they so desired. Plaintiffs cannot be heard at this late date to lay the blame for their failure to take non-party discovery at the corporate feet of defendant in order to obtain yet another continuance.

■ Plaintiffs express their dissatisfaction with the fact that on several occasions, an Upjohn witness stated that another Upjohn employee was the person best able to testify about a particular subject and when that other employee was examined he referred plaintiffs back to the first witness. Two such instances require discussion. First, Dr. Stubbs and Dr. Ishler referred to one another as competent to testify as to why the proposed insert language, "not recommended for intrathecal use," was submitted to the FDA. *See* Deposition of

Samuel Stubbs at 182–85; Deposition of George Ishler at 72. The confusion created by this finger-pointing was not ameliorated by the fact that Dr. Stubbs was not produced for redeposition as Upjohn had originally agreed. Upjohn will be required to produce for telephone deposition the employee or employees who have knowledge of the circumstances surrounding the addition to the package insert, "not recommended for intrathecal use."

Second, Dr. Ishler and Dr. Stubbs relied on one another as the persons able to testify about the circumstances surrounding the preparation and possible submission of a draft package insert that contained comprehensive warnings about intrathecal use of Depo-Medrol. Deposition of Samuel Stubbs at 203; Deposition of George Ishler at 121–25. Upjohn will be required to produce for telephone deposition the employee or employees who have knowledge of the preparation of the draft, the substance of any communication with the FDA about the draft, whether the draft was submitted to the FDA, and if the draft was not submitted, the reasons why it was not submitted.

All other contentions of this nature are without merit.

Plaintiffs finally contend that Upjohn obstructed discovery by leading plaintiffs to believe their document production and answers to interrogatories were comprehensive when, in fact, defendant had withheld documents and information.

■ It is undisputed that three items were not produced to plaintiffs: Dr. Stubbs' personal/correspondence Depo-Medrol file, Deposition of Samuel Stubbs at 135; the Drug Experience Group's Depo-Medrol file, Deposition of William Barry at 121–22; and the Drug Experience Group's quarterly report on Depo-Medrol. Deposition of William Barry at 158. While this material was not disclosed by Upjohn and was within the scope of discovery, I cannot say that Upjohn's conduct constituted a fraud or wilful transgression of the Federal Rules of Civil Procedure.

In response to plaintiffs' first request for production, Upjohn objected on the grounds of burdensomeness and scope. *See, e.g.,* The Upjohn Company's Responses to Plaintiffs' First Request for Production of Documents ¶ 2. Upjohn's response continues by stating, "Subject to this objection, inspection and copying of the New Drug Application .... files for Depo-Medrol, to the extent not privileged, will be permitted....." *Id.* While plaintiffs in effect argue that defendant represented that *all* relevant material could be found in the NDA, defendant's response cannot form a basis for that argument. A plain reading of the response shows that Upjohn took the position that the request was overbroad but was willing to provide the NDA as an accommodation. This position was highlighted in a letter from defense counsel. *See* Letter from T.M. Kittredge, Esquire to Walter C. Ward, Esquire (November 14, 1983) ("we have never represented that the NDA, IND and pre-IND files for Depo-Medrol were the only sources of information which could conceivably be responsive to your discovery request").

Plaintiffs never tested Upjohn's burdensomeness objection with a motion to compel. Although Upjohn's objection may not have withstood judicial scrutiny, Upjohn certainly did not represent that it had searched for and produced every requested document and plaintiffs' allegations of fraud are without merit. Nonetheless, because these files have been identified and are clearly relevant, defendant shall produce them to plaintiffs subject to any pertinent confidentiality agreement. For reasons earlier discussed, however, plaintiffs may not at this late date test the sufficiency of Upjohn's burdensomeness objection.[2]

Finally, the substance of plaintiffs' motion must be viewed against the nature of the assertions made by plaintiffs' counsel during the June 20, 1985, telephone conference. Over the telephone, counsel painted a picture of obstructionism, unreasonableness, and perhaps fraud on the part of Upjohn and its counsel. Close scrutiny of plaintiffs' voluminous moving papers reveals that, *at worst,* Upjohn engaged in a few isolated transgressions of the discovery rules. However, based on the papers presented to me I can say without hesitation that the conduct of Upjohn and its counsel was free from the malevolence that plaintiffs' counsel suggested during the telephone conference.

An order follows.

## ORDER

AND NOW, this 3rd day of January, 1986, for the reasons expressed in the accompanying memorandum, it is hereby ordered as follows:

1. With respect to the questions identified in the memorandum as potentially involving the attorney-client privilege, the following schedule will be observed:

a. If plaintiffs wish to move to compel the answers to any of these questions, their motion shall be filed by January 15, 1986.

b. Defendant shall be given until January 27, 1986 to respond to plaintiff's motion with affidavits in support of its position.

c. Plaintiffs shall have until February 7, 1986 to reply to defendant's response.

2. By January 27, 1986, at a time mutually convenient to counsel, Upjohn shall produce Dr. Ishler by telephone to allow plaintiffs' counsel to ask him whether, in his opinion, the FDA would have objected to the language, "Do not use intrathecally." Plaintiffs' counsel may ask reasonable follow-up questions that arise from the question or Dr. Ishler's answer to the question. Costs associated with the telephone deposition will be absorbed by Upjohn.

3. By January 27, 1986, at a time mutually convenient to counsel, Upjohn shall

---

**2.** Plaintiffs' argument with respect to the *Hahn* lawsuit is somewhat more persuasive because after Upjohn had objected to the production of post-event information, it produced some post-event material, but not the names of the parties in *Hahn.* Nonetheless, I cannot say that Upjohn's failure to produce constituted fraud on either the court or opposing counsel.

produce by telephone the employee or employees who have knowledge surrounding the package-insert addition, "Not recommended for intrathecal use." Plaintiffs' counsel may ask reasonable questions that pertain to the addition of the language. Costs associated with the telephone deposition will be absorbed by Upjohn.

4. By January 27, 1986, at a time mutually convenient to counsel, Upjohn shall produce by telephone the employee or employees who have knowledge of the following:

a. The preparation of a draft package insert containing comprehensive warnings about intrathecal use of Depo-Medrol;

b. The substance of any communications between the FDA and Upjohn about the draft;

c. Whether the draft was submitted to the FDA; and

d. If the draft was not submitted to the FDA, the reasons why it was not submitted. Plaintiffs' counsel may ask reasonable questions that pertain to these areas. Costs associated with the telephone deposition will be absorbed by Upjohn.

5. By January 27, 1986, Upjohn shall produce to plaintiffs the following items:

a. Dr. Stubbs' personal/correspondence file on Depo-Medrol;

b. The Drug experience Group's file on Depo-Medrol; and

c. The Drug Experience Group's quarterly report on Depo-Medrol.

6. In all other respects, plaintiffs' motion is denied.

7. If a discovery dispute develops as a result of efforts to comply with this order, the parties are directed to place a call to chambers to expedite resolution of the dispute.

8. On January 19, 1986 at 4:30 p.m., Mr. Kittredge will initiate a conference call to discuss *final* preparations for trial.

9. Counsel will be specially listed to commence trial on February 24, 1986.