STATE OF NEBRASKA, APPELLEE, V. KURT TANNER, APPELLANT.

448 N.W.2d 586

Filed December 1, 1989.   No. 88-1038.

Louie M. Ligouri for appellant.

Robert M. Spire, Attorney General, and David Edward Cygan for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

After a trial to the court, the defendant, Kurt Tanner, was found guilty of driving while under the influence of alcoholic liquor. The defendant was sentenced to probation for a term of 1 year. Upon appeal to the district court, the judgment was affirmed.

The defendant has now appealed to this court and contends that there was insufficient evidence to find him guilty beyond a reasonable doubt and that the trial court erred in overruling his motion to dismiss. We affirm.

At 11:20 p.m. on May 19, 1988, after hearing a "squealing noise" coming from Tanner's vehicle, Deputy Sheriff James Haith stopped the vehicle. Upon approaching the driver and requesting him to produce his driver's license, Deputy Haith smelled alcohol on Tanner's breath and observed an open 12-pack beer container inside the vehicle. He also noticed that a passenger in the vehicle had a can of beer in his hand.

Deputy Haith requested Tanner to perform several field sobriety tests, which Tanner failed. Tanner was then arrested, and a blood sample was subsequently taken from him for later analysis.

A complaint was filed on May 31, 1988, charging Tanner with operating a motor vehicle while under the influence of alcoholic liquor or of any drug, or while having a concentration of ten-hundredths of 1 gram or more by weight of alcohol per 100 milliliters of his blood.

On July 11, 1988, Tanner filed a motion for discovery, requesting that the blood sample be made available to him for further testing. On July 19 at a hearing on this motion, the trial judge ordered the prosecution to make the sample available to a lab of the defendant's choice. After the State failed to comply with this order, the defendant, on July 25, moved to dismiss the case. At a hearing on this motion on August 11, the county attorney stated that the prosecution could not comply with the order because the blood sample had coagulated prior to or during the initial testing and was thus unsuitable for accurate

testing. An initial test of the coagulated blood showed a .173 blood-alcohol content. The prosecution further stated that because of the unreliability of the blood sample, it would not use the test results in prosecuting its case. Tanner made no further request to have the State produce the sample so its condition could be verified by his lab. After noting that the proper remedy under Neb. Rev. Stat. § 29-1913 (Reissue 1985) would be to exclude the evidence, the trial court denied the motion to dismiss.

Also at this hearing, the State was granted leave to amend the complaint to allege only that Tanner was operating a motor vehicle while under the influence of alcoholic liquor.

After a bench trial on August 25, in which the State's only evidence was the testimony of Deputy Haith, Tanner was found guilty on the amended complaint.

On appeal, Tanner first contends that there was insufficient evidence to find him guilty beyond a reasonable doubt. In determining the sufficiency of the evidence to sustain a criminal conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of explanations, or weigh the evidence; such matters are for the finder of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Swift, ante* p. 55, 443 N.W.2d 613 (1989); *State v. Washington*, 232 Neb. 838, 442 N.W.2d 395 (1989); *State v. Auman*, 232 Neb. 341, 440 N.W.2d 254 (1989). Moreover, this court has previously held that a police officer's opinion testimony, based on personal observations of the defendant, is sufficient to sustain a finding that the defendant operated a motor vehicle when the defendant was under the influence of alcohol. See, *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987); *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987); *State v. Jablonski*, 199 Neb. 341, 258 N.W.2d 918 (1977). "As used in § 39-669.07, the phrase 'under the influence of alcoholic liquor' means after the ingestion of alcohol in an amount sufficient to impair to any appreciable degree the ability to operate a motor vehicle in a prudent and cautious manner." *State v. Burling, supra* at 728, 400 N.W.2d at 875.

At trial, Deputy Haith testified that he has investigated approximately 24 driving while intoxicated cases since the beginning of 1988, that during his law enforcement training he received instruction on DWI procedures and field sobriety tests, and that he has observed the conduct of people who have consumed alcohol. He testified that upon asking Tanner for his operator's license, he smelled alcohol on Tanner's breath and observed an open 12-pack container in Tanner's vehicle. Deputy Haith further testified that Tanner failed the three field sobriety tests that he requested Tanner to perform. He also stated on direct examination that based upon the field sobriety tests, it was his opinion that Tanner was driving under the influence of alcoholic liquor.

Taking the view most favorable to the State, Deputy Haith's testimony, which was based on his observations of Tanner, provides sufficient evidence to support Tanner's conviction for operating a motor vehicle while under the influence of alcoholic liquor. Tanner's first assignment of error is without merit.

Tanner next contends that the trial court erred in overruling his motion to dismiss, which was made after the State failed to comply with the discovery order. Section 29-1913(2) provides:

> If the evidence necessary to conduct the tests or analyses by the defense is unavailable because of the neglect or intentional alteration by representatives of the prosecuting authority, other than alterations necessary to conduct the initial tests, the tests or analyses by the prosecuting authority shall not be admitted into evidence.

The record is unclear as to the cause of the coagulation and the point at which the sample coagulated. Whether the coagulation was due to the neglect or intentional alteration by the State, the penalty is exclusion of the evidence. The statute does not provide for dismissal as a remedy. The trial court applied the only available remedy under § 29-1913(2) by suppressing the test results. *State v. Brodrick*, 190 Neb. 19, 205 N.W.2d 660 (1973). We further note that the failure to preserve evidence potentially useful to the defendant does not violate the 14th amendment due process clause unless the defendant shows that the officers acted in bad faith in destroying the evidence. *Arizona v. Youngblood*, ____ U.S. ____, 109 S. Ct. 333, 102 L.

Ed. 2d 281 (1988). "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood, supra* at 109 S. Ct. at 337 n.1. It is not enough that the unavailable evidence could have exculpated the defendant if preserved; the exculpatory value of the evidence must be apparent before the evidence was destroyed. *Youngblood, supra.*

In the present case, Tanner has made no such showing. An issue not presented to or passed upon by the trial court is not an appropriate issue for consideration on appeal. *State v. Blair,* 230 Neb. 775, 433 N.W.2d 518 (1988). Moreover, because Tanner did not demand that the sample be produced by the State so that its condition could be verified by his experts once it was learned that the sample had coagulated, he waived its production. The second assignment of error is without merit.

AFFIRMED.

SHANAHAN, J., concurring.

Although the majority speaks in terms of physical evidence "destroyed" by the State or evidence which has become unavailable through the State's neglect or intentional alteration, Tanner's claim involves existing physical evidence which was available for scientific evaluation. Thus, much in the mode of the Wildean observation that some historians write about events which never occurred, Tanner's appeal has been disposed by some legal principles which are inapplicable.

As noted, Tanner was charged with violation of Neb. Rev. Stat. § 39-669.07 (Supp. 1987), the offense of drunk driving or one's operating a motor vehicle while such operator has a "concentration of ten-hundredths of 1 gram or more by weight of alcohol per 100 milliliters of [the operator's] blood," or while such operator is "under the influence of alcoholic liquor," that is, "intoxicated," which means that as the result of drinking alcohol, the operator of a motor vehicle experiences an appreciable loss of normal control over bodily and mental faculties during operation of the vehicle. See *State v. Johnson,* 215 Neb. 391, 338 N.W.2d 769 (1983).

In conjunction with Tanner's arrest for drunk driving, the

State contemporaneously obtained a sample of Tanner's blood as evidence to prove the offense charged. In prosecutions for felonies and misdemeanors punishable by imprisonment, which includes drunk driving in Nebraska, a defendant may request certain physical evidence, such as a sample of the defendant's blood which the State has acquired, and obtain the physical evidence from the State for independent testing by the defendant's expert, subject to appropriate safeguards imposed by the trial court. See Neb. Rev. Stat. § 29-1913(1) (Reissue 1985). Thus, pursuant to § 29-1913(1), as a part of the discovery process provided in Nebraska criminal procedure, the defendant, by timely motion in a trial involving jeopardy to a defendant's liberty, is entitled to have an expert of the defendant's selection, but subject to appropriate safeguards imposed by the trial court, independently examine, test, or analyze physical evidence which is in the State's custody or possession and which may be subject to varying expert opinion. *State v. Adkins*, 280 S.E.2d 293 (W. Va. 1981); *Sabel v. State*, 248 Ga. 10, 282 S.E.2d 61 (1981); *State v. Davis*, 399 So. 2d 1168 (La. 1981); *People v White*, 40 N.Y.2d 797, 358 N.E.2d 1031, 390 N.Y.S.2d 405 (1976). If there is relevant evidence presented establishing that a valid scientific test cannot be performed on physical evidence which is subject to the discovery process in a criminal proceeding, a court may deny a defendant's request that physical evidence be independently examined, tested, or analyzed by the defendant's expert. *Roberts v. State*, 243 Ga. 604, 255 S.E.2d 689 (1979).

On July 19, 1988, pursuant to Tanner's discovery motion under § 29-1913(1), the court ordered the State to produce the sample of Tanner's blood for testing by Tanner's expert. Without any intervening action by the court or change in the situation, as far as the record reflects, on July 21 the prosecutor, notwithstanding the existing discovery order for production of Tanner's blood sample for testing by Tanner's expert, filed a "supplemental reply" to Tanner's discovery motion and, for the first time, claimed and alleged that Tanner's blood sample had "clotted during the initial testing" and, therefore, "the blood sample in the possession of the State of Nebraska is not suitable for further testing." At a hearing on August 11, the State

offered no proof to substantiate the allegations in its supplemental reply to Tanner's discovery motion. Instead, as the majority notes, the prosecutor represented to the court that "the blood sample had coagulated *prior to* or during the initial testing and was thus unsuitable for accurate testing," but that the "initial test of the coagulated blood showed a .173 blood-alcohol content." (Emphasis supplied.) It is peculiar to the point of absolutely amazing that if, as the majority recounts, Tanner's blood sample had coagulated before the State's test on the sample, the State, nonetheless, achieved "[a]n initial test of the coagulated blood [which] showed a .173 blood-alcohol content." Yet, the State maintained that Tanner's coagulated blood sample was unsuitable for testing. Quite obviously, coagulation never impeded or prevented testing by the State. Apparently, the State tested the coagulated sample of Tanner's blood, which, after the State's testing, coagulated even further *so that any additional testing was* "unsuitable" or impossible. Such a bloody phenomenon, although perhaps a scientific possibility, boggles the mind of those untrained in serology.

Although the State discarded the claim that Tanner operated a motor vehicle while he had a blood-alcohol concentration of "ten-hundredths of 1 gram," there remained the allegation that Tanner was "under the influence of alcoholic liquor" or intoxicated when he was driving the vehicle. After an appropriate test or analysis of Tanner's blood sample and a determination of the alcohol level in Tanner's blood at the time of his arrest, an expert would have scientific information as the basis for an opinion whether Tanner was intoxicated during operation of the vehicle. Whether Tanner's blood sample, which was admittedly in the State's possession, would have afforded such information was ostensibly unknown to the trial court and, with due deference, is most likely unknown to this court. Regarding the sample of Tanner's blood, susceptibility to testing and analysis rested in the province of an expert and not in the prosecutor's unsubstantiated assertions. When an individual's liberty is jeopardized by prosecution for a criminal offense, proof, not a prosecutor's palaver, should govern the outcome. Without relevant information for the exercise of an

independent determination necessary for the efficacious discovery process in criminal cases, especially under circumstances such as those present in Tanner's case, a trial court is reduced to the status of a forensic functionary for a prosecutor.

Consequently, the more plausible solution to the problem presented in Tanner's appeal would be the production of Tanner's blood sample, which was in the State's possession, for testing by Tanner's expert to determine whether the blood sample had any scientific value. If Tanner's expert concluded that the blood sample had become unsusceptible for testing due to the State's neglect or intentional alteration, the trial court, on acceptance of the conclusion by Tanner's expert, would be in a position to decide what action should be taken as a consequence of the State's impropriety concerning the blood sample. In all this, the fact remains that in accordance with the right to discovery under § 29-1913(1) concerning production and independent testing or analysis of physical evidence in the State's possession, the discovery process in criminal cases and the order for production in Tanner's case should not have been frustrated or thwarted by the State's conduct displayed in the case now before us.

Next, the majority states: "Moreover, because Tanner did not demand that the sample be produced by the State so that its condition could be verified by his experts once it was learned that the sample had coagulated, he waived its production." The implication is that once the State asserted that Tanner's blood sample had coagulated, Tanner, at the risk of waiving the avails of the previous and existing production order, was required to demand production of the allegedly coagulated blood sample. In short, according to the majority, Tanner had to make the additional request that the State comply with the court's existing discovery order—a request that one bound by a court's order comply with the order. If one disregards the legal redundancy inherent in the necessity of a request for a court's order to comply with the court's previous order, Tanner's conduct, nevertheless, constituted a waiver of his right to production of the blood sample. "A waiver is the voluntary and intentional relinquishment of a known right, privilege, or

claim, and may be demonstrated by or inferred from a person's conduct." *State v. Kennedy*, 224 Neb. 164, 170, 396 N.W.2d 722, 726 (1986). By not standing on discovery rights under the court's existing order and by proceeding to trial without objection in the face of the State's failure to comply with the discovery order, which authorized independent testing by Tanner's expert, Tanner waived the discovery order and his right to complain on account of the State's noncompliance with the order. See, *Butler v. Pettigrew*, 409 F.2d 1205 (7th Cir. 1969); *Price v. Maryland Cas. Co.*, 561 F.2d 609 (5th Cir. 1977); *Reuber v. United States*, 787 F.2d 599 (D.C. Cir. 1986); *Lapenna v. Upjohn Co.*, 110 F.R.D. 15 (E.D. Pa. 1986). As the result of Tanner's waiver, there is no error to be reviewed regarding the trial court's conduct in not enforcing its discovery order that the State produce Tanner's blood sample for testing by Tanner's expert.

Thus, I agree with the majority's conclusion that the evidence supports Tanner's conviction, but disagree with the majority's explanation that Tanner's assignment of error concerning production of the blood sample is without merit. However, as the result of Tanner's waiver of the discovery order, the district court's judgment, affirming Tanner's conviction, should be affirmed.

CAPORALE and GRANT, JJ., join in this concurrence.