PETE RAND, Petitioner, v. LOY LADD, Judge, Respondent.

No. 46880.

FEBRUARY 11, 1947.

OPINION MODIFIED AND REHEARING DENIED APRIL 11, 1947.

C. I. McNutt, of Des Moines, for petitioner.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, Vernon R. Seeburger, County Attorney, and Ed S. Thayer, Assistant County Attorney, for respondent.

WENNERSTRUM, C. J.—The petitioner in this court seeks a review by certiorari of the contempt proceedings brought against him wherein he was held guilty by the respondent for the violation of a liquor injunction heretofore granted against the petitioner. The judgment and sentence imposed provided that the petitioner be imprisoned in the county jail of Polk County, Iowa, for a period of six months and he was further ordered to pay a fine of $1,000. The petitioner, through these original proceedings in certiorari in this court, seeks to test the validity of the judgment and sentence imposed on him by the respondent.

On October 4, 1945, there was filed in the office of the clerk of the district court of Polk County, Iowa, an information and petition seeking the citation of Pete Rand and the requirement that he appear before the trial court and show cause why he should not be adjudged to be in contempt of court. It was therein alleged that on October 20, 1928, Pete Rand was permanently enjoined from keeping for sale, selling, having possession of, or otherwise trafficking in intoxicating liquor. It was further alleged that on the 14th day of September 1943,

and on or about the 22d day of June 1945, and at other times, the defendant, the petitioner herein, did sell, own, and keep for sale, intoxicating liquors in violation of the injunction previously entered against him. On October 17, 1945, Rand filed a motion to dismiss the petition for contempt on the grounds that the injunction referred to in the petition was not granted under chapter 93.1, 1939 Code of Iowa, the then applicable Code (chapter 123, 1946 Code), in that, it is claimed, said injunction had been issued under a previously existing liquor law which had been superseded by the chapter to which reference has heretofore been made. It was therein contended that the petitioner could not be cited or punished for contempt for the violation of an injunction unless the same was granted under the provisions of chapter 93.1 of the 1939 Code (chapter 123, 1946 Code). The trial court, the respondent in the present action, overruled the motion to dismiss the petition for citation for contempt. The petitioner, Pete Rand, then presented a request that he be given time to file an answer under the provisions of Rule 85 of the Iowa Rules of Civil Procedure. This request was overruled and upon petitioner's refusal to plead immediately the court entered a plea of not guilty. The trial of the contempt proceedings was commenced on October 22, 1945, and had progressed to the extent that four witnesses had been examined when information was brought to the attention of the court of the death of Francis J. Kuble, the county attorney who had instituted the contempt proceedings against Rand. The court on its own motion continued the proceedings. The trial was resumed on December 31, 1945.

Prior to the resumption of the trial the petitioner, Rand, filed what was designated as a motion for change of venue, wherein it was asked that the trial of the contempt hearing be changed from the Honorable Loy Ladd to one of the other district judges of Polk County, Iowa. The petitioner, under oath, alleged that he believed that Judge Ladd was so prejudiced against him that he, Rand, could not obtain a fair and impartial trial if tried by said judge. Attached to the motion were affidavits sworn to by three disinterested parties who al-

leged that they were not related to petitioner, that they did not stand in the relation of servant, agent, or employee of the petitioner, and that it was their belief that Judge Ladd was so prejudiced against Rand that said judge could not give him a fair and impartial trial. This motion was overruled and it was ordered that the cause proceed to trial.

On October 20, 1928, a liquor-injunction decree was entered against Pete Rand which enjoined the petitioner and another individual therein named:

"* * * from directly or indirectly operating, conducting, continuing or maintaining a nuisance * * * and from directly or indirectly manufacturing, selling, dispensing or trafficking in or having possession of intoxicating liquors * * * or keeping for sale or with intent to sell or dispense intoxicating liquor at [or in] the premises described * * * or at any other place in the State of Iowa in violation of law."

It is shown that Peter Rand conferred with the deputy township assessor for Bloomfield Township, Polk County, Iowa, and that Rand valued the property for 1945 wherein it is claimed he engaged in the violation of certain liquor laws and thereby violated the injunction previously entered against him. The assessor testified that he did not know who owned the property on June 22, 1945, but that he believed at the time he made the assessment mention was made of the fact that Gladys Rand, the wife of the petitioner, owned it. It is further shown that on January 2, 1945, Gladys Rand conveyed a one-half interest in Lot 1, Geil Place, except the north fifteen feet thereof, an official plat, Bloomfield Township, Polk County, Iowa, to Peter A. Rand. This is the ground on which it is claimed the petitioner, in part, violated the terms of the injunction. It is also shown that on January 4, 1945, an instrument was filed in the office of the county recorder of Polk County, Iowa, wherein it was stated that Peter A. Rand and Gladys Rand operated under the trade name of the Des Moines Catering Company. It is shown, however, that the Des Moines Catering Company was then located on a separate tract of ground

and in a separate, near-by building from the one wherein it is claimed Peter Rand operated the Mainliner Night Club.

It is further disclosed by the record that on September 14, 1943, Peter Rand was arrested in Story County, Iowa, at which time he was in a truck containing a load of liquor; that at that time Rand informed the officers that he had bought the liquor in Minnesota, and that he was selling liquor at the Mainliner Night Club. It is shown that the liquor in the possession of Rand in the truck at that time was approximately sixty cases. A plea of guilty to the charge of illegal transportation of liquor was entered by Rand in the Story county proceeding.

It is further shown that on June 22, 1945, a group of constables seized approximately ninety-nine bottles of liquor at the Mainliner Night Club; that at the time of the raid Rand was arrested when he was outside of the Night Club. It is further shown that at that time he maintained he did not own or operate the Mainliner but that the same was owned, operated, and under the supervision of his wife, Gladys Rand. It is further shown, as previously commented upon, that the trial court admitted over the objections of the petitioner an instrument relative to the trade name of the Des Moines Catering Company, which the State alleges was signed by Peter A. Rand.

In the contempt proceedings in the trial court Carl A. Smedal was called as a witness by the State and, over his claimed objection and that of the petitioner that he had been the attorney for Rand in the Story county proceeding and that communications to him at that time were privileged, he was questioned and directed by the court to answer. He testified that the Rand on trial in the contempt proceeding was one and the same person as the Rand who had entered a plea of guilty in the Story county proceeding wherein he had represented him. The record further discloses that during the contempt proceeding the trial court admitted over the objections of the petitioner a fingerprint card which bore the signature of Peter A. Rand, which signature was used for comparative purposes with other admitted exhibits. The signature on this card had been obtained at the time of petitioner's arrest on or about June 22, 1945.

It is the contention of Rand that the admission of this exhibit resulted in his being compelled to furnish evidence against himself.

The petitioner, as defensive matter, sought to show by certain exhibits and witnesses that the Mainliner Night Club was operated by Gladys Rand. The objections to all offers relative to evidence of the operation of the Mainliner Night Club by Gladys Rand were sustained by the trial court on the grounds that they were hearsay, self-serving, declarations of third persons, and therefore incompetent and irrelevant. The court ruled on all objections made to the introduction of evidence throughout the trial.

I. In the contempt hearing in the lower court it was the contention of Rand, as it is maintained in this court, that the trial court was without jurisdiction to try him for contempt for the reason that the injunction upon which the action was predicated was not granted under chapter 93.1 of the 1939 Code, which Code was in effect at the time of the contempt proceedings. It was maintained that any action the court took in connection with the contempt proceedings was in excess of its lawful jurisdiction and contrary to law.

The petition for citation for contempt set forth the granting of the original injunction, the violation of this injunction in Story County, Iowa, on or about September 14, 1943, and at the Mainliner Night Club on or about June 22, 1945. The original injunction was apparently granted under the provisions of chapter 98 of the 1927 Code, sections 2017–2039, which chapter pertains to injunction and abatement.

A study of chapter 98 of the 1939 Code, which relates to injunctions, discloses that sections 2017 through 2030 of the 1939 Code are the same as the like-numbered sections found in chapter 98 of the 1927 Code, with the exception that in sections 2023 and 2023.1 of the 1939 Code the manner of taxation of attorney's fees is changed from that set forth in sections 2023 and 2023-a1 of the 1927 Code.

Because of its applicability to this appeal we hereinafter set forth section 2020 of the 1939 Code, which is as follows:

"Scope of injunction. When an injunction has been granted, it shall be binding on the defendant throughout the state, and any violation of the provisions of this title anywhere within the state shall be punished as a contempt, as provided in this chapter." (Chapter 98.)

This last-quoted section is the same as section 2020 of the 1927 Code. We also hereinafter set forth section 2027 of the 1939 Code, which is the same as the like-numbered section in the 1927 Code:

"Violation. In case of the violation of any injunction granted under the provisions of this title, the court, or in vacation a judge thereof, may summarily try and punish the offender. The proceedings shall be commenced by filing with the clerk of the court an information under oath, setting out the alleged facts constituting such violation, upon which the court or judge shall cause a warrant to issue, under which the defendant shall be arrested."

In section 2020 of the 1939 Code, to which reference has previously been made, it is stated that "any violation of the provisions of this title anywhere within the state shall be punished as a contempt, as provided in this chapter." And in section 2027 of both the 1927 and 1939 Codes reference is made to "the violation of any injunction granted under the provisions of this title." The title referred to in both the 1927 and 1939 Codes is "Title VI" and in each case is captioned "Alcoholic Beverages." In each of the Code sections the reference is to "the provisions of this title."

In connection with our comments heretofore set forth attention is called to the fact that in Code section 1921.068 of the 1939 Code, which is a part of chapter 93.1, reference is made to "violation of any injunction granted under the provisions of this chapter." The chapter therein referred to is the chapter wherein the Iowa Liquor Control Act is set out.

It will thus appear that section 1921.068, Code of 1939, has applicability only to chapter 93.1 of the 1939 Code, while section 2027 of the 1927 and 1939 Codes is applicable only to what

may be termed old injunctions granted under section 2020 of said Codes, and perhaps under previous statutes.

Because of its later consideration in this opinion, and also by reason of the matters discussed in this division, we quote section 2029 of the 1939 Code:

"First conviction. A party found guilty of contempt under the provisions of section 2028, shall for the first offense be punished by a fine of not less than two hundred nor more than one thousand dollars, or by imprisonment in the county jail not less than three nor more than six months, or by both fine and imprisonment."

This section is the same as found in section 2029 of the 1927 Code.

Inasmuch as the contempt proceeding in this case was based upon the violation of an injunction granted under section 2020, Codes of 1927 (1939) it is apparent that sections 2027 and 2029 in the same chapter of said Codes are here applicable and the provisions of chapter 93.1, Code of 1939, do not apply.

We hold that as to contempt proceedings for the violation of injunctions granted under the provisions of chapter 98, sections 2027 and 2029 were not repealed or superseded by chapter 93.1, Code of 1939. Appellant's contention on this point is not well founded.

II. It is one of the contentions of the petitioner that the trial court exceeded its lawful jurisdiction and acted unlawfully in overruling his motion for change of venue. In the motion filed by the petitioner, which was supported by his own sworn statement and the affidavits of three other persons, the affiant stated:

"That I believe that the Honorable Loy Ladd is so prejudiced against me that I cannot obtain a fair and impartial trial before him."

The affidavits of the individuals other than the petitioner were worded substantially the same. The court, in overruling petitioner's motion, stated:

"\* \* \* that he has no prejudice against this defendant \* \* \* that the allegations of the affiants whose affidavits are attached to said motion do not state the facts \* \* \*."

It will be observed that the most that can be said for these affidavits is that the affiants believed that Judge Ladd was prejudiced against the petitioner. This is not sufficient. It was stated, in Foley v. Utterback, 196 Iowa 956, 957, 195 N. W. 721, 722, in commenting upon an affidavit similar to those herein referred to, as follows:

"The prejudice alleged must be affirmatively shown. Mere belief on the part of the affiants is insufficient to overcome the presumption which arises from the denial implied from the order of the judge denying the petition. State v. Hale, 65 Iowa 575."

It is our conclusion that it was a matter within the discretion of the trial court to rule upon its disqualification to hear the contempt proceedings against the petitioner. The trial court having indicated that it was not prejudiced, and there being no affirmative showing that it was prejudiced, we hold that there was no error in overruling petitioner's motion.

III. It is one of the contentions of the petitioner that the trial court committed error in admitting in evidence certain exhibits to which objections were made. One of these was Exhibit 24, which was a duplicate copy of a beer permit. It is disclosed that this exhibit was all in printing or typewriting, with the exception that where the names of the owners were set out the names of Pete and Gladys Rand were written in pencil. Mainliner was written in parentheses following the names. This exhibit shows that the application for a beer permit was signed by Gladys Rand. The record also shows that the township license for a tavern or roadhouse was issued to Gladys Rand and that the bond which was a part of the application was signed by Gladys Rand.

In connection with our consideration of this exhibit we believe that we can and should consider other evidence presented. It is shown by the record that on or about June 22, 1945,

intoxicating liquor was purchased by certain witnesses at the Mainliner Night Club but not from the petitioner; that approximately ninety-nine bottles were seized by officers on that date at this place of business; that Pete Rand was in the Mainliner Night Club at this time and at other times that were testified to; and that Peter Rand apparently signed the assessment roll for 1945 for the Mainliner Night Club. We believe the fact that the beer permit bore the written names of Pete and Gladys Rand as owners was a circumstance that might be considered by the court as to the manner in which the night club was operated, even though the application for the permit was signed by Gladys Rand. There is no evidence that the names of the owners were changed after the signature of Gladys Rand was placed on the exhibit. We hold that there was no error in the court's admitting this exhibit.

Objection was also interposed to the offer of evidence relative to the Des Moines Catering Company. The record shows that Peter Rand signed an affidavit to the effect that the trade name, Des Moines Catering Company, was that of a business owned by Peter A. Rand and Gladys Rand and that the business address was 6001 Southwest Twenty-first Street, Des Moines, Iowa. There is no admitted evidence that the address given was that of the Mainliner Night Club and in fact there is evidence that the Des Moines Catering Company was operated in a separate building. Even though this particular exhibit is held to have been improperly admitted in evidence we hold that there was sufficient competent evidence of Peter A. Rand's association with the operation of the Mainliner Night Club to show a violation of the injunction previously entered against him.

IV. It is a further contention of the petitioner that the trial court committed error in admitting the testimony of Carl A. Smedal over the objections and claim of privilege made by him and the petitioner. As previously stated, the record shows that Mr. Smedal appeared as the attorney of record in the case of State of Iowa v. Peter Rand in Story county. In the instant case Mr. Smedal was asked, over objections that were overruled that the information he might testify to was

privileged, whether the petitioner was one and the same person as the individual who had pleaded guilty to an offense against the intoxicating-liquor laws in Story county and in which he appeared for the petitioner in that case. Mr. Smedal then testified that the defendant in the two actions was the same person. We hold that there was no error in overruling the claim of privilege as made by Mr. Smedal and the petitioner. In the case of Crawford v. Raible, 206 Iowa 732, 740, 221 N. W. 474, 478, we stated, in part:

"The mere relation of attorney and client is not sufficient to invoke the inhibition of the statute. Stoddard v. Kendall, 140 Iowa 688. It is only communications which are confidential that are protected. Caldwell v. Meltveldt, 93 Iowa 730; Mitchell v. Mutch, 180 Iowa 1281."

See, also, Foreman v. Archer, 130 Iowa 49, 51, 52, 106 N. W. 372.

We hold that the fact that the petitioner in this case may have told Mr. Smedal that his name was Rand was not a communication of a confidential nature.

It was held in State v. Powell, 161 Wash. 514, 516, 297 P. 160, 161, that the identifying of a defendant by his attorney in another case did not violate the rule as to privileged communications. A portion of the statements incorporated in the opinion in the last-cited case is applicable to the present case and, because we approve of the statements, they are hereinafter set forth:

"The next contention of appellant is that the attorney for appellant, who had also been his attorney in a former prosecution for violation of the liquor law, was called to the witness stand by the state and asked to identify appellant as the person who had been convicted in the previous prosecution. Counsel for appellant objected to his testifying, on the ground that his information was privileged. The court overruled the objection and compelled the attorney to testify.

"We do not consider the fact that the attorney knew that appellant was the person who had been convicted in the

previous prosecution was privileged. As the trial court observed, it was merely a matter of seeing, and the knowledge that the attorney defended the same man in court. It was therefore not a privileged communication. With this we agree.''

V. A further contention made by petitioner is that Exhibit E, a card bearing the fingerprints of petitioner and his signature, was erroneously admitted in evidence. This exhibit was admitted in connection with the testimony of a handwriting expert that the signature on the card and the signature of Pete Rand appearing on a stipulation filed in the original injunction proceeding were in the same handwriting and that the signature on the stipulation was the signature of the petitioner in the present case.

It is the claim of the petitioner that by the admission of this card bearing his signature he was required to give testimony against himself in a criminal case.

The admissibility of the fingerprints is not in issue. The question raised by petitioner pertains to the use made of his signature on the fingerprint card. The fingerprints and signature were obtained following the petitioner's arrest on June 22, 1945.

There is no evidence that this signature was involuntarily given and there is therefore no basis for petitioner's contention he was required to give testimony against himself. Since the signature was voluntarily given, it was clearly admissible for the purpose of comparison as against the objection of ''self incrimination.'' 20 Am. Jur., Evidence, section 747; 22 C. J. S., Criminal Law, section 656. Whether the signature would be admissible for such purpose if involuntarily given is a question not before us and we express no opinion upon it.

VI. We are further presented with the consideration of petitioner's contention that the trial court was in error in sustaining objections to petitioner's offer of evidence of individuals who, if permitted to testify, would have testified to transactions with Gladys Rand in connection with the operation of the Mainliner Night Club. The objection made on the part of the State to this offered testimony was hearsay, self-serving,

and the indirect declarations of a third person. This third person in this case was Gladys Rand, the wife of the petitioner.

We hold this proffered evidence was hearsay and inadmissible. It related to facts and information obtained by the proposed witnesses by reason of their business transactions with Gladys Rand. It was thereby sought to be shown that Gladys Rand operated the night club. She was not a witness. The State had no opportunity to cross-examine her. She did not testify as to her connection with the Mainliner Night Club. Our statement found in Mitchell v. Montgomery Ward & Co., 226 Iowa 956, 958, 285 N. W. 187, 188, is applicable to the situation presented in our consideration of the offer of evidence made by petitioner. We therein stated:

" 'As a general rule the law excludes all mediate or hearsay evidence, of mere hearsay declarations, made to those who are sworn and examined.' The controlling reason for its rejection is that it cannot be subjected to the ordinary tests which the law has provided for the ascertainment of truth—the obligation of an oath, and cross-examination, things which the law in ordinary cases invariably requires. Ibbitson v. Brown, 5 Iowa 531.''

See, also, Ross v. Loomis, 64 Iowa 432, 436, 20 N. W. 749.

VII. One of the concluding contentions of the petitioner is that he has been deprived of his liberty by the action of the trial court without due process of law. The basis of this contention rests on the premise that the rulings of the trial court on the admissibility of certain evidence were incorrect. Our holding as to the correctness of the trial court's action in its disposition of these various matters disposes of this last contention of the petitioner.

VIII. It is the further contention of the petitioner that upon the whole record he was denied a fair and impartial trial as guaranteed him by the Fifth and Fourteenth Amendments to the Constitution of the United States and sections 1, 9, and 10 of Article I of the Constitution of the State of Iowa. Our comments in connection with Division VII of this opinion

394

answer this last contention of the petitioner. We hold that there is no merit in this claim.

IX. The petitioner claims that the judgment of the court was excessive and the result of passion and prejudice. There is no basis for this contention. The sentence and judgment of the court was that the petitioner be committed to the Polk county jail for a period of six months and that he also pay a fine of $1,000. This fine and sentence, it is true, was the maximum which the legislature, under section 2029 of the 1939 Code, section 128.15, 1946 Code, set in actions of this kind. The fact that the trial court imposed the maximum jail sentence and fine is no evidence that it was excessive and the result of passion and prejudice. The legislature did not think that such a fine and sentence would be excessive and we do not feel justified, under the record, in holding that it was. The imposition of the fine, sentence, and judgment as entered by the trial court was within its discretion. We find no justification for holding that this discretion was abused.

X. Upon the whole record we find that the court was justified in its several rulings concerning which we have commented and that there was ample proof of the violation of the injunction heretofore granted against the petitioner in this case. There is no denial by him of his violation of the liquor injunction by reason of his transportation of liquor in Story county. We also hold that there was ample evidence to justify the trial court in ruling that the petitioner herein was interested in the operation of the Mainliner Night Club, where, as shown by the evidence, there were open violations of the liquor laws. Upon the record as submitted we hold that there was no error on the part of the trial court in its several rulings, except as heretofore commented upon, and that the trial court had jurisdiction to hold the petitioner as being in contempt of court. Consequently, it is the holding of this court that the writ of certiorari heretofore issued from this court should be annulled.—Writ annulled.

All Justices concur.