STATE OF NEBRASKA, APPELLEE, V. LYLE D. BURLING, APPELLANT.
400 N.W.2d 872

Filed February 13, 1987.    No. 86-549.

Robert R. Gibson of Professional Legal Associates of Nebraska, P.C., for appellant.

Robert M. Spire, Attorney General, and Janie C. Castaneda, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Following a county court bench trial, defendant, Lyle D. Burling, was convicted of failing to stop at a clearly marked stop sign and of driving while under the influence of alcohol, first offense, in violation of Neb. Rev. Stat. § 39-669.07 (Reissue 1984). The county court judgment was affirmed on appeal to the district court. While defendant appeals both convictions to this court, his three assignments of error relate solely to the drunk driving conviction and combine to claim that the district court erred in failing to find error appearing on the record made in the county court, in that (1) the Intoxilyzer Model 4011AS test result should not have been considered, and (2) the evidence does not support the conviction. We affirm.

At approximately 1 a.m. on July 13, 1985, Trooper Steven Gill of the Nebraska State Patrol observed a pickup truck, pulling a trailer which was carrying an automobile, weave across the centerline of the road four to five times, change speed

from 45 to 60 mph, and fail to stop for a stop sign at the intersection of two highways. Gill then turned on his flashing lights and proceeded to stop the defendant driver, who explained he had not stopped for the sign because of difficulty in pulling the trailer.

Gill noticed defendant had the odor of alcohol on his breath, had slurred speech, and had trouble retrieving his license from his billfold. When instructed to go to the patrol car, defendant staggered and swayed, lost his footing "once or twice," and had difficulty walking on the shoulder of the road.

After he got inside the patrol car, defendant was cited for failing to stop at the stop sign and was asked to recite the alphabet. He made three attempts to recite the alphabet, but could not proceed past the letter *k*. According to Gill, defendant also failed a "horizontal gaze test."

More field sobriety tests were performed outside of the patrol car. When instructed to walk heel to toe, defendant staggered and had to step to the side to balance himself. When instructed to hold his arms out, close his eyes, and touch his finger to the tip of his nose, defendant would either touch the bridge of his nose or miss his nose completely. He also swayed while attempting to perform this test. When instructed to balance on one leg and raise the opposite foot off the ground, defendant lifted his foot, then dropped it immediately. Defendant was asked to stand erect with his head tilted back and his eyes closed. During this maneuver defendant swayed, staggered, and almost fell. Finally, defendant was asked to take a preliminary breath test, which he also failed. Gill concluded that defendant was driving while under the influence of alcohol.

Defendant was then taken to the Jefferson County sheriff's office, where a test on an Intoxilyzer Model 4011AS was administered by Fairbury Police Officer Terry Mathy. Mathy testified that he had difficulty getting a sample because defendant would not blow hard enough into the machine to produce a reading. After the fifth attempt, a reading showing that defendant had a blood alcohol level of .164 of 1 percent by weight of alcohol was obtained. Mathy also testified that defendant's speech was slurred, his clothes were disorderly, and

his eyes were bloodshot.

Section 39-669.07 provides in part:

> It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor or of any drug or when that person has ten-hundredths of one per cent or more by weight of alcohol in his or her body fluid as shown by chemical analysis of his or her blood, breath, or urine. Any person who shall operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor or of any drug or while having ten-hundredths of one per cent by weight of alcohol in his or her body fluid as shown by chemical analysis of his or her blood, breath, or urine shall be deemed guilty of a crime . . . .

Thus, an alcohol-related violation of § 39-669.07 may be proved by establishing that one was in actual physical control of a motor vehicle while under the influence of alcohol or that one was in actual physical control of a motor vehicle while having ten-hundredths of 1 percent by weight of alcohol in his or her body fluid. *State v. Tomes*, 218 Neb. 148, 352 N.W.2d 608 (1984); *State v. Hilker*, 210 Neb. 810, 317 N.W.2d 82 (1982); *State v. Weidner*, 192 Neb. 161, 219 N.W.2d 742 (1974). As used in § 39-669.07, the phrase "under the influence of alcoholic liquor" means after the ingestion of alcohol in an amount sufficient to impair to any appreciable degree the ability to operate a motor vehicle in a prudent and cautious manner. *State v. Weidner, supra*. See, also, *Uldrich v. State*, 162 Neb. 746, 77 N.W.2d 305 (1956); *Shanahan v. State*, 162 Neb. 676, 77 N.W.2d 234 (1956).

Under the provisions of § 39-669.07 the measurement of the amount of alcohol in the body fluid, that is, in the blood, may be determined by a chemical analysis of the blood, breath, or urine. Thus, the result of any chemical analysis of the breath or urine must be converted into a percentage by weight of alcohol in the blood.

An associate professor of pharmacology who is also a research scientist testified on behalf of the defendant that the machine known as the Intoxilyzer Model 4011AS is an

abbreviated infrared spectrophotometer, or infrared camera, which reads the amount of infrared light waves absorbed by alcohol and certain other organic-compound molecules present in the test subject's breath. The machine then converts that reading into a measure of the alcohol in the subject's blood, which registers as the test result. The conversion formula built into the machine assumes that alcohol in any human's breath will be distributed and reflected in his or her blood in a ratio of 1 breath unit to 2,100 blood units. According to this witness, recent research has shown that the ratio in fact varies from one human to another and ranges from 1:1,100 to 1:3,400. For this reason forensic toxicologists have abandoned reliance upon the 1:2,100 ratio. Moreover, the ingestion of certain substances other than alcohol will adversely affect the Intoxilyzer test result. Thus, it is this pharmacologist's opinion that the ·Intoxilyzer does not reliably measure blood alcohol levels. The State adduced no evidence to contradict the foregoing testimony.

Neb. Rev. Stat. § 39-669.11 (Reissue 1984) provides that a chemical test of blood, breath, or urine made in conformity with methods approved by the Department of Health and by an individual possessing a valid permit issued by that department

> shall be competent evidence in any prosecution under a state statute or city or village ordinance involving operating a motor vehicle while under the influence of alcoholic liquor, or involving driving or being in actual physical control of a motor vehicle with an amount of alcohol in the blood in violation of a statute or a city or village ordinance.

"Competent evidence" is that which tends to establish the fact in issue; that which is admissible and relevant on the point in issue. See, *Weiner v. State ex rel. Real Estate Comm.*, 217 Neb. 372, 348 N.W.2d 879 (1984); *Shepherd v. City of Omaha*, 194 Neb. 813, 235 N.W.2d 873 (1975), *overruled on other grounds Caniglia v. City of Omaha*, 210 Neb. 404, 315 N.W.2d 241 (1982). Thus, by enacting § 39-669.11, the Legislature has made breath tests conducted in accordance with the regulations of the Department of Health admissible in evidence on the issue of the level of alcohol in one's blood.

The Constitution of this state, however, distributes the powers of government to three separate and coequal departments or branches, namely, the legislative, executive, and judicial branches. It further prohibits any one branch from exercising any power belonging to another branch. Neb. Const. art. II, § 1. It has been held that while the Legislature has the right to prescribe acceptable methods of testing for alcohol content in the body fluid, and perhaps even the right to prescribe that such evidence is admissible in a court of law, it is a judicial function to determine whether the evidence, if believed, is sufficient to sustain a conviction. *State v. Bjornsen*, 201 Neb. 709, 271 N.W.2d 839 (1978). Accord *State v. Boehmer*, 1 Haw. App. 44, 613 P.2d 916 (1980). Stated another way, the Legislature may not declare the weight to be given to evidence or what evidence shall be conclusive proof of an issue of fact, *People v. Buford*, 110 Ill. App. 3d 46, 441 N.E.2d 1235 (1982); that is to say, determining whether evidence is of probative value is a legal question, and the Legislature cannot impair judicial analysis and resolution of such questions. See *Kentucky Com'n, etc. v. Com., Dept. of Justice*, 586 S.W.2d 270 (Ky. App. 1979).

Even ignoring in this instance the effect of ingesting certain substances, the uncontroverted testimony of the pharmacologist compels the conclusion that if one's breath-to-blood distribution ratio were at the 1:3,400 level, the machine would understate his or her blood alcohol level, whereas if one's distribution ratio were at the 1:1,100 level, the machine would overstate his or her blood alcohol level. *State v. Bjornsen, supra*, ruled that a test result which was subject to a margin of error had to be adjusted so as to give the defendant the benefit of that margin. Thus, we are concerned only with the degree by which the machine may overstate defendant's blood alcohol level. One having a 1:1,100 breath-to-blood distribution ratio has an actual blood alcohol level which is but 52.38 percent of the reading produced by the machine. Therefore, in this case the Intoxilyzer result must be reduced to 52.38 percent of .164 of 1 percent, that is, to .086 of 1 percent. Consequently, the Intoxilyzer test result fails to establish that defendant had "ten-hundredths of 1 percent by weight of

alcohol in his blood" and therefore fails to establish a violation of § 39-669.07.

That conclusion does not, however, resolve the matter, for a conviction will not be set aside in the absence of a showing that an error prejudiced the defendant. *State v. Borchardt, ante* p. 47, 395 N.W.2d 551 (1986). Even discarding the Intoxilyzer test result, the preliminary breath test result, *State v. Klingelhoefer*, 222 Neb. 219, 382 N.W.2d 366 (1986), and the "horizontal gaze test" result, *State v. Borchardt, supra,* the remaining evidence that defendant had the odor of alcohol on his breath, slurred his speech, had bloodshot eyes, had trouble retrieving his license from his billfold, was disheveled, could not recite the alphabet, had difficulty in coordinating his movements, could not keep his balance, failed to stop at a stop sign, and crossed over the centerline of the road four or five times overwhelmingly supports the conclusion that he had ingested alcohol in an amount sufficient to impair to an appreciable degree his ability to operate a motor vehicle in a prudent and cautious manner, thus establishing a violation of § 39-669.07. Therefore, the error the county court committed in considering the Intoxilyzer test result was harmless beyond a reasonable doubt and provides no basis for reversing defendant's conviction.

The judgment of the district court being correct, it is affirmed.

AFFIRMED.