STATE OF NEBRASKA, APPELLEE, V. PIERRE C. HVISTENDAHL,
APPELLANT.

405 N.W.2d 273

Filed May 1, 1987.    No. 86-598.

E. Dean Hascall of Hascall, Jungers & Garvey, for appellant.

Robert M. Spire, Attorney General, and Yvonne E. Gates, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The defendant was convicted, following a trial to the court in the county court for Sarpy County, of operating or being in actual physical control of a motor vehicle when he had ten-hundredths of 1 percent or more by weight of alcohol in his body fluid. Neb. Rev. Stat. § 39-669.07 (Reissue 1984). He was sentenced to 7 days in the Sarpy County jail with credit for 1 day served, ordered to pay a fine of $200 plus costs, and his driving privileges were suspended for 6 months. The conviction and

sentence were affirmed by the district court for Sarpy County, and the defendant has appealed.

The defendant contends there was insufficient evidence to sustain his conviction, in that (1) the 2,100-to-1 blood/breath partition ratio used by the Intoxilyzer Model 4011AS in its calculation of blood alcohol concentration is not constant from individual to individual; (2) the breath test was performed over an hour after the defendant was stopped; and (3) the court considered a blood alcohol concentration measured by weight per volume, instead of measured by weight as required by § 39-669.07. We affirm the decision of the district court.

The defendant was stopped by a Bellevue police officer during the early morning hours of August 31, 1985, while driving his automobile in Sarpy County. He was eventually arrested and taken into the police station, where a test of his breath on an Intoxilyzer Model 4011AS produced a reading of .133 percent.

There is a great deal of evidence in the record regarding field sobriety tests and opinion testimony of the officers as to defendant's intoxication. However, at the conclusion of the case the trial judge ordered the opinion testimony of the officers stricken, so no determination was made by the trial court beyond a finding of operating a motor vehicle with more than ten-hundredths of 1 percent of alcohol in defendant's body fluid. Therefore, we will not consider the officers' testimony other than as it relates to the breath test.

The defendant first contends that the breath test performed on him was not sufficiently accurate to sustain a finding of guilt beyond a reasonable doubt. In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and a verdict made by the trier of fact must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Goodon*, 219 Neb. 186, 361 N.W.2d 537 (1985). As the district court, which reviewed the county court's determination of guilt, stated:

[This case] is a "swearing match" between two expert

witnesses over the validity of a breathalizer test conducted on the defendant, and the conversion factors used by the testing equipment to translate alcoholic content of a person's breath to alcholic [sic] content of that person's blood. It is not within this Court's province to retry the ultimate issue, even though a different decision might have been reached had the trial been held before me . . . .

This "swearing match" consisted of testimony of the defendant's expert, Dr. Richard Jensen, and the State's rebuttal witness, William Ihm. Dr. Jensen, a toxicologist and analytical chemist, testified as to the accuracy of the Intoxilyzer Model 4011AS used in the defendant's breath test. He concluded that the Model 4011AS assumed a constant relationship between the amount of alcohol in a person's blood and the amount in the breath, that ratio being 2,100 to 1. He testified that this blood/breath partition ratio is different from individual to individual, mainly due to differing rates of alcohol absorption and elimination from person to person and the presence of impurities in the tested person's mouth, which would give a false high reading. He stated that the 2,100-to-1 ratio was arrived at by committee decision but that now the majority of toxicologists reject the idea that the blood/breath partition ratio is constant from individual to individual. He also stated that in experiments he had conducted in which simultaneous breath and blood alcohol readings were taken, 10 to 14 percent of persons showed a higher alcohol concentration in the blood when calculated from a breath test as opposed to an actual blood test. Finally, he concluded that he believed no ratio between breath and blood could be used to establish beyond a reasonable doubt the level of blood alcohol content from a breath test. He did state, however, that if one could sample and measure true alveolar air (air at the end of the bronchi), the ratio would be closer to 1,736 to 1, with an error rate of approximately plus or minus 4 percent.

Dr. Jensen did not testify as to the relationship of alveolar air to that obtained by deep breathing and prolonged vigorous blowing into the Intoxilyzer. However, Kenneth King, a lieutenant in the Bellevue Police Department who is qualified as an expert on the use and operation of this particular machine,

testified as to the procedure of observing a subject for 15 minutes before commencing the test. This is to make sure that no foreign elements, such as tobacco, mints, food, gas, or other items, are introduced into the mouth to taint the breath sample. King also explained that there is a green light on the machine which indicates that the subject is blowing hard enough and long enough to build up sufficient volume of pressure to get a sample of the deep lung air. He further explained that this is important in order to eliminate the variables that would affect the accuracy of the 2,100-to-1 ratio. We believe there was sufficient competent evidence for the trial court to conclude that air being tested is, for all practical purposes, alveolar air.

The rebuttal witness for the State, William Ihm, testified that in experiments he had conducted, using Sarpy County's Intoxilyzer Model 4011AS and simultaneous blood tests, the Intoxilyzer result is usually a little bit lower than the blood alcohol result. He then stated that 95 times out of 100 the breath result would be within 10 percent of the blood result, and that there is always a deviation between the breath test result and the blood test result.

The defendant contends that this testimony established that the breath test performed on him was not sufficiently accurate to sustain a finding of guilt beyond a reasonable doubt. It is true, as we first stated in *State v. Bjornsen*, 201 Neb. 709, 271 N.W.2d 839 (1978), and again in *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987), that a test result which is subject to a margin of error must be adjusted so as to give the defendant the benefit of that margin. However, when there is a conflict in the evidence as to what that margin of error actually is, we will affirm the decision of the trier of fact so long as there is sufficient evidence in the record, if believed, to sustain its finding of guilt. See *State v. Goodon*, 219 Neb. 186, 361 N.W.2d 537 (1985).

In this case there is sufficient evidence to sustain the county court's finding of guilt. The court was faced with two witnesses who disagreed as to the accuracy of the Intoxilyzer Model 4011AS in converting breath test results to blood alcohol concentration. Had the county court believed the State's rebuttal witness, it would have been justified in finding the

defendant not guilty, based on the evidence that 5 percent of the subjects involved in his experiments had a blood alcohol concentration outside of a 10-percent margin of error. The court, however, apparently chose to believe the defendant's witness, who stated that using a ratio of 1,736 to 1 instead of the 2,100-to-1 ratio used by the machine, a result could be produced with an error rate of plus or minus 4 percent. The court could then have properly adjusted the defendant's reading of .133 percent as is required by *Bjornsen* and *Burling, supra,* by changing the ratio to 1,736 to 1 and applying the 4-percent error rate to that result. This would have produced an adjusted reading of .1055 and was therefore sufficient to sustain the defendant's conviction. (That is, .133 times 1,736, divided by 2,100, times .96 equals .1055.)

Additionally, it must be noted that the court was not bound to accept the conclusion of the defendant's expert witness that no ratio could be used that would establish guilt beyond a reasonable doubt. Such legal determinations must be made by the trier of fact, not an expert witness. See *Cathcart v. Blacketer,* 217 Neb. 755, 351 N.W.2d 70 (1984).

The defendant next argues that there was insufficient evidence to sustain his conviction because the breath test was performed over an hour after he was stopped by the police. We have stated that a test made in compliance with Neb. Rev. Stat. § 39-669.11 (Reissue 1984) is sufficient to make a prima facie case on the issue of blood alcohol concentration. See *State v. Dush,* 214 Neb. 51, 332 N.W.2d 679 (1983). Thus, any testimony adduced by the defendant as to the accuracy of a breath test taken over an hour after the stop is admissible for the purpose of raising the specter of reasonable doubt in the mind of the trier of fact. In this case, however, despite the testimony of the defendant's expert witness, the trier of fact determined that the defendant was guilty beyond a reasonable doubt. Thus, the only way this court can reverse that determination is to find that the defendant's expert testimony cast reasonable doubt on the defendant's guilt as a matter of law. The testimony in this case does not rise to that level.

The defendant testified that he had consumed eight beers evenly throughout the course of the evening, until 1 a.m. when

he quickly consumed two more beers. He left the party at 1:15 a.m. and was then stopped by the police at approximately 1:30 a.m. He was not tested until 2:34 a.m. The defendant's expert testified that in 20 minutes the average person has absorbed only 50 percent of his or her last drink and that in 45 to 60 minutes the average person has absorbed 90 percent of his or her last drink. Apparently, then, because the expert believed that at 1:30 a.m. the defendant would *not* have and at 2:30 the defendant *would* have absorbed all of the alcohol contained in the defendant's last two drinks, the expert testified that at the time the defendant was stopped by the police he would have had a blood alcohol concentration that was "quite a bit lower" than at the time of the test. The expert could not, however, state what the defendant's blood alcohol concentration would have been at the time of the stop, or state how the trier of fact could determine how much less the blood alcohol concentration would have been at that time. The expert also did not provide any information on the rate of elimination of alcohol from the system. We have no way of knowing how much lower "quite a bit lower" might be. Whether, when applied to the adjusted readout of .1055, such testimony creates a reasonable doubt as to the guilt of the defendant is a question of fact which was resolved against the defendant.

Finally, the defendant believes there was insufficient evidence to sustain his conviction because the court received into evidence the reading of the breath test in percent by weight per volume instead of percent by weight as prescribed by § 39-669.07. To support this argument the defendant cites *State v. Carwile*, 441 S.W.2d 763 (Mo. App. 1969).

In that case the Missouri statute involved provided that " '[p]er cent by weight of alcohol in the blood shall be based upon milligrams of alcohol *per one hundred milligrams* of blood.' " (Emphasis supplied.) *Id.* at 765. The Division of Health's rules for determination of blood alcohol by breath analysis provided that the alcohol content of blood should be based upon milligrams of alcohol *per 100 milliliters of blood.* The defendant's test was .16 percent, but the operator of the test did not know whether that figure represented blood alcohol concentration per weight of blood or per volume of blood. The

Missouri court of appeals held that the statute prescribed measurement in weight per milligrams and the rule prescribed measurement in weight per milliliters, and therefore it was error to instruct the jury that the breath analysis indicated the amount of alcohol in defendant's blood to be .15 percent or more by weight.

The statute involved in this case, however, simply prescribes that the alcohol content in the blood should be measured by weight, but does not prescribe whether that alcohol content should be expressed in terms of weight of alcohol in a particular weight of blood, or weight of alcohol in a particular volume of blood. § 39-669.07. The Department of Health has determined that the weight of alcohol should be measured in a particular volume of body fluid—that being 100 milliliters of, in this case, blood. Neb. Admin. Code tit. 177, ch. 1, § 002.01 (1984). It is obvious that weight of alcohol can be measured in either a known weight or a known volume. The Legislature determined it wanted alcohol to be measured by weight and left open for the Department of Health whether that weight would be measured in a given weight of blood or a given volume. The Department of Health chose weight per 100 milliliters of blood, which is one of several acceptable definitions of blood alcohol concentration by weight. See *State v. Carwile, supra*. The breath test result was expressed in weight per volume of blood, which is what the Department of Health requires and which § 39-669.07 does not prohibit; therefore, it was sufficient evidence upon which to base the defendant's conviction.

The judgment of the district court is affirmed.

AFFIRMED.