STATE of South Dakota, Plaintiff and Appellant,

v.

Nancy Ann McCARTY, Defendant and Appellee.

No. 15881.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1988.

Decided Dec. 21, 1988.

Rehearing Denied Jan. 30, 1989.

Roger A. Tellinghuisen, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellant.

N. Dean Nasser, Jr. of Nasser Law Offices, P.C., Troy Leonard, Legal Intern of Nasser Law Offices, Sioux Falls, for defendant and appellee.

HENDERSON, Justice.

An order of the circuit court vacated a DWI judgment entered against Nancy Ann McCarty in the magistrate court. McCarty had taken a direct appeal from the magistrate court to the circuit court. State now appeals. We reverse the circuit court's order vacating the DWI judgment.

## FACTS

In the early morning hours of May 16, 1986, a Sioux Falls police officer observed a vehicle driven by McCarty going east in the west-bound lanes of a divided street. The officer stopped the vehicle after it ran a red stoplight. When McCarty rolled down the window of her vehicle, the officer detected a strong odor of intoxicants. According to the officer, McCarty staggered as she walked back to the patrol car; he

also noted that her speech was thick and her eyes watery. After McCarty was seated inside the patrol car, there was a strong odor of intoxicants on her breath. The officer had McCarty perform several field sobriety tests, after which he placed her under arrest. McCarty consented to a chemical test of her breath, and the intoxilyzer indicated a blood alcohol content of 0.14 per cent.

State charged that McCarty drove or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages, in violation of SDCL 32–23–1(2). A jury trial was held in the magistrate division of the second judicial circuit. During the trial, McCarty objected to the introduction of the intoxilyzer results. She also raised questions as to whether the 2100:1 breath to blood ratio used by the intoxilyzer is a reliable measure of blood alcohol content. The trial court admitted the results of the breath test into evidence and instructed the jury (instruction number 6) that under South Dakota law, the percentage by weight of alcohol and blood is based upon 2100 cubic centimeters of deep lung breath. The jury returned a guilty verdict and McCarty appealed to the circuit court. The circuit court ruled that the giving of instruction 6 constituted prejudicial error and remanded the case for a new trial.

## ISSUE

Did the giving of instruction 6, which concerned the 2100:1 breath to blood ratio of the intoxilyzer, constitute prejudicial error?

## DECISION

■ Instruction 6, as given by the trial court, states: "South Dakota law provides that percent by weight of alcohol in the blood shall be based upon milligrams of alcohol per 1.0 cubic centimeters of whole blood or 2100 cubic centimeters of deep lung breath." This language is identical to the last paragraph of SDCL 32–23–7. State argues that even if the trial court erred in giving instruction 6, the error was cured by other instructions given by the court. We agree.

The intoxilyzer used by the police officer in this case is a device which uses a breath sample to determine the amount of alcohol in a person's blood. In doing so, the intoxilyzer operates under the assumption that there is as much alcohol in 2100 parts of breath as there is in one part of blood. This 2100:1 ratio is fixed in the machine and is not changed for any given person. Therefore, if the machine is working properly and the person being tested has a physiology of 2100 parts of breath to one part of blood, the intoxilyzer is accurate to within 10%. However, not everyone has a 2100:1 breath to blood ratio; 2100:1 is merely an average based on various studies. These studies reveal that actual breath to blood ratios can range from 1142:1 to 3478:1.

Because of these wide variations, the reliability of the intoxilyzer has come under increasing attack in the courts and the scientific community. One author states: "The breath alcohol testing community has adopted an immutable alcohol solubility coefficient of 2100, which is contrary to the laws of physics in its artificial rigidity.... In the real world, the solubility coefficient changes with temperature, pressure, and even the concentration of the dissolved gas itself." D. Nichols, Drinking/Driving Litigation § 27:03 (1985). Very recently, the Washington Supreme Court came to a similar conclusion:

Because blood-breath ratios vary both between individuals, and at different times in the same individual, a breath test based on a 2100:1 blood-breath ratio may not accurately represent a particular individual's blood alcohol level. If the actual blood-breath ratio is lower than 2100:1, a breath test will overestimate blood alcohol, and vice versa. Factors influencing an individual's blood-breath ratio include body temperature, hematocrit level (the ratio between red blood cells and blood plasma), and the time at which alcohol

was consumed in relation to the time breath alcohol is measured.

*State v. Brayman,* 110 Wash.2d 183, 751 P.2d 294, 297 (1988). *See also State v. Hvistendahl,* 225 Neb. 315, 405 N.W.2d 273 (1987), and *State v. Burling,* 224 Neb. 725, 400 N.W.2d 872 (1987), in which the Nebraska Supreme Court ruled that intoxilyzer results subject to a margin of error must be adjusted so as to give the defendant the benefit of that margin.

In the present case, chemists for the state testified that the intoxilyzer is a reliable device for indirect measurement of blood alcohol content; even so, they admitted that not everyone has a 2100:1 breath to blood ratio. One of the state's witnesses, Donald Frasch, agreed with the statement that the 2100:1 ratio was a committee compromise and that individual ratios ranging from 1142:1 to 3478:1 were reported. Furthermore, Dr. Milton Hanson, a chemistry professor at Augustana College in Sioux Falls, South Dakota, testified that very few people have the precise ratio of 2100:1. He stated that 2100:1 is a "reasonable average, but the number of persons well outside that average is significant."

In light of this uncontradicted testimony by the experts, it is clear that instruction 6 was improper. However, giving the instruction did not rise to the level of prejudicial error. *State v. Albright,* 418 N.W.2d 292 (S.D.1988). It is well settled that jury instructions are adequate when, *considered as a whole,* they give the full and correct statement of the law applicable to the case. *State v. Stapleton,* 387 N.W.2d 28 (S.D. 1986); *State v. Grey Owl,* 295 N.W.2d 748 (S.D.1980).

■ In instruction 5, the trial court properly instructed the jury on the statutory presumptions contained in SDCL 32–23–7. Instruction 5 also stated that "the presumptions created by statute are not conclusive and may be considered by you in connection with all other evidence sub-mitted in the case, in determining the guilt or innocence of the defendant." In addition, a subsequent handwritten instruction, given to the jury during its deliberations, cured any error caused by instruction 6. This written instruction, given with the knowledge of both counsel, was triggered by a jury note to the judge.* It stated:

In regard to your question concerning instruction # 6, you are instructed that the presumptions created by statute contained in instructions # 5 and # 6 are not conclusive and may be considered by you in connection with all the other evidence submitted in this case in determining the guilt or innocence of the defendant.

Therefore, the jury was properly instructed that the 2100:1 breath to blood ratio in instruction 6 was not conclusive and could be outweighed by other evidence submitted in the case. We conclude that the instructions of the magistrate, taken as a whole, fairly and adequately instructed the jury and that no prejudice flowed to McCarty.

Reversed and the judgment of the magistrate court reinstated.

MORGAN, SABERS and MILLER, JJ., concur.

WUEST, C.J., concurs in result.

WUEST, Chief Justice (concurring in result).

Although I concur in the result reached by the majority, it is my opinion that instruction 6 was not improper. This instruction, as the majority opinion states, mirrors the last part of SDCL 32–23–7, which provides in pertinent part: "Percent by weight of alcohol in the blood shall be based upon milligrams of alcohol per 1.0 cubic centimeters of whole blood or 2100 cubic centimeters of deep lung breath." By enacting this statute, the legislature has established the appropriate standard or ratio for determining blood alcohol concentration when an

* The jury's note stated: "Is the statue [sic] described in instruction # 6 a given that must be adhered to in our deliberation? Or can variances as per testimony be allowed to refute the validity of that instruction specifically as it relates to deep lung air."

intoxilyzer or a similar breath analysis device is used.

I further believe that the majority's reliance on *Brayman, Hvistendahl,* and *Burling* is misplaced. These cases were decided by the Washington and Nebraska Supreme Courts, respectively. It is important to note that neither state's statutes regarding intoxilyzer evidence speak in the same direct terms expressed in SDCL 32–23–7. Their statutes, of course, do allow such breath test evidence to be admitted, but they permit the trier of fact to determine the "competency" of this evidence.** *See* RCWA 46.61.506; Neb.Rev.St. § 39–669.07. Our statute clearly does not allow this competency determination.

The majority opinion's adopting the aforementioned decisions of the Washington and Nebraska Supreme Courts would apparently allow the standard or ratio set forth in SDCL 32–23–7 to be adjusted according to each defendant's situation. In my opinion, this is tantamount to declaring the statute unconstitutional. If the standard merits change, this task should be left in the hands of the legislature.

---

** RCWA 46.61.506 does provide a standard or ratio for determining blood alcohol concentration which is akin to the ratio expressed in SDCL 32–23–7. The Washington statute, however, goes on to state that such breath test evidence "may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor or any drug." RCWA 46.61.506. The relevant Nebraska statute, Neb.Rev.St. § 39–669.11, does not specify a ratio or standard for determining blood alcohol levels. It merely states that "[a]ny test ... shall be competent evidence in any prosecution ... involving operating a motor vehicle while under the influence of alcoholic liquor...." Neb.Rev.St. § 39–669.11. In this statutory "light," SDCL 32–23–7 is clearly distinguishable from the Washington and Nebraska statutes.

It should be further noted that after reading the majority opinion, one may be left with the impression that the Washington Supreme Court has determined intoxilyzers to be totally unreliable. This is simply untrue. In its concluding sentence, the *Brayman* court stated, "Breath test evidence is admissible to prove violations of DWI statutes." *Brayman,* 751 P.2d at 306.