**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Shawn David HOFER, Defendant and Appellant.**

No. 18107.

Supreme Court of South Dakota.

Considered on Briefs Sept. 3, 1993.

Decided Feb. 23, 1994.

Mark Barnett, Atty. Gen. and Joan Boos Schueller, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Steve Jorgensen, Sioux Falls, for defendant and appellant.

MILLER, Chief Justice.

Shawn David Hofer appeals his conviction for driving while under the influence of alcohol and his conviction as a habitual offender. We affirm.

### FACTS

Hofer was charged with driving under the influence of alcohol. State also filed a Part II information alleging that Hofer had two prior convictions for driving under the influence. The DUI case was tried to a jury on July 30, 1992. Over Hofer's objection, the trial judge allowed the State to admit evidence concerning an intoxilyzer test, including the test results. The jury found Hofer guilty of driving under the influence.

The habitual offender charge was tried to the court several days later. The state's attorney informed the court that she had been unable to locate the fingerprint records relating to Hofer's prior DUI convictions.

The state's attorney announced that she planned to call Robert Christenson and John Wilka, the attorneys that had represented Hofer in the prior DUI cases. Hofer objected and asserted attorney/client privilege. The trial court noted that attorney/client privilege had been properly invoked, but held that the state's attorney could ask narrow questions to learn if Hofer was the same man those attorneys had represented in the prior cases. Christenson and Wilka testified that Hofer was the individual they represented in the prior cases. The trial court found Hofer guilty of the habitual offender charge. Hofer appeals both convictions.

### DECISION

**THE TRIAL COURT DID NOT ERR WHEN IT ALLOWED THE ADMISSION OF EVIDENCE RELATING TO THE INTOXILYZER TEST.**

Hofer challenges the admissibility of the intoxilyzer test result by questioning the accuracy of the scientific assumptions underlying the intoxilyzer machine. The intoxilyzer uses a breath sample to find the amount of alcohol in a person's blood. Because a breath sample is used, some formula must be applied to find the correlation between the breath/alcohol level and the blood/alcohol level. The manufacturers of the intoxilyzer machine assume there is as much alcohol in 2100 parts of breath as there are in one part of blood.

State's expert witness testified that the 2100:1 ratio was a "committee compromise" that is not accurate as applied to every person. State's expert witness testified that different ratios are appropriate for different people depending upon numerous factors. Scientific studies show that these ratios vary over a wide range from 1142:1 to 3478:1. *See State v. McCarty*, 434 N.W.2d 67 (S.D.1988). In *McCarty*, we acknowledged the existence of this "committee compromise" concerning the 2100:1 ratio and recognized the inaccuracy inherent in applying one ratio to all types of people. *Id.* at 69. "Because of these wide variations, the reliability of the intoxilyzer has come under increasing attack in the courts and the scientific community." *Id.* at 68.

■ Hofer argues that the 2100:1 ratio is not "generally accepted" in the scientific community and thus the intoxilyzer test results should not have been admitted against him. Although unstated, Hofer implicitly relies on *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013 (D.C.Cir.1923). Under the *Frye* test, "before testimony related to a scientific principle or discovery is admissible, the principle 'must be sufficiently established to have gained general acceptance in the particular field in which it belongs.'" *State v. Adams,* 418 N.W.2d 618, 620 (S.D.1988) (citing *Frye,* 293 F. at 1014).

The United States Supreme Court recently held that the *Frye* test was superseded by the Federal Rules of Evidence and thus is no longer determinative of the admissibility of scientific evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. ——, —— 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469, 480 (1993). Specifically, the Supreme Court held that the *Frye* test had been superseded by Federal Rule of Evidence 702, governing expert witness testimony, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Federal Rule of Evidence 702.

The Supreme Court explained the new rule as follows:

The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. The term "applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds." Webster's Third New International Dictionary 1252 (1986). Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science.

*Daubert,* 509 U.S. at ——, 113 S.Ct. at 2795, 125 L.Ed.2d at 481.

Thus, general acceptance in the scientific community is no longer required. *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2794, 125 L.Ed.2d at 480. However, the trial judge still has the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2799, 125 L.Ed.2d at 485.

■ The general scientific principles underlying the intoxilyzer are beyond scientific dispute. Hofer only challenges the reliance on the inaccurate 2100:1 ratio. At his trial, Hofer was allowed to present evidence that the 2100:1 ratio is not applicable to every person. There was no evidence presented to show what ratio would be appropriate for Hofer. The triers of fact heard Hofer's evidence concerning the potential inaccuracies in the intoxilyzer test results and certainly considered those potential inaccuracies when they decided how much weight they were going to give to the intoxilyzer test results.

The intoxilyzer test result and the foundational evidence presented at Hofer's trial is scientific knowledge that could clearly assist the trier of fact to understand the evidence or to determine a fact in issue. Accordingly, the evidentiary rules concerning the admission of scientific evidence, as pronounced in *Daubert,* were satisfied in this case. The trial court did not err in allowing testimony concerning the intoxilyzer and did not err in allowing admission of the intoxilyzer test results.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ALLOWING TWO ATTORNEYS TO IDENTIFY HOFER AS THE SAME MAN THEY HAD REPRESENTED IN TWO PRIOR CRIMINAL CASES.

■ After Hofer was convicted on the DUI charge, he was tried before the court as a habitual offender. State had copies of documents relating to two DUI convictions for a man named Shawn Hofer. State was unable to locate the fingerprint cards from those cases to establish that the Shawn Hofer convicted of DUI in those two cases was the same Shawn Hofer on trial in this case.

State proposed to call the defense attorneys listed on the two prior judgments and ask them if the Shawn Hofer in this case was the same Shawn Hofer they represented in those cases. Hofer objected and invoked attorney/client privilege.

The trial court held that the attorney/client privilege had been properly invoked. However, the trial court also held that State could ask narrow questions aimed at learning whether this was the same Shawn Hofer those two attorneys had previously represented. State did not ask the attorneys about details from the cases they had handled. State simply presented each attorney with documents from the case they handled and asked whether the man they represented was present in the courtroom. Christenson was shown three documents from the prior case: the information; a petition to enter a guilty plea; and, a judgment of conviction. Wilka was shown a judgment of conviction from the prior case. Both attorneys identified the defendant in this case as the same man they had previously represented.

Hofer argues that his attorney/client privilege was violated because the attorneys should not have been allowed to testify as to any matters relating to their representation of him.

Under SDCL 19–13–3, a client has "a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client...." *See also Hogg v. First Nat'l Bank,* 386 N.W.2d 921 (S.D.1986).

The issue in this case is whether calling upon the attorneys to identify their client involved the revelation of any "confidential communication." State correctly notes that at least two courts have held that it does not violate attorney/client privilege for an attorney to identify a former client in court. *State v. Bumpus,* 459 N.W.2d 619 (Iowa 1990) *cert. denied* 498 U.S. 1001, 111 S.Ct. 563, 112 L.Ed.2d 570 (1990); *Rand v. Ladd,* 238 Iowa 380, 26 N.W.2d 107 (1947); *State v. Powell,* 161 Wash. 514, 297 P. 160 (1931).

A communication is considered "confidential" if it is "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." SDCL 19–13–2(5). In other words, when Hofer hired the attorneys in the other cases, did he intend that they should not disclose that he was their client? The documents from the previous case reveal that Christenson and Wilka appeared in court and identified themselves as attorneys representing Shawn Hofer. Clearly, the fact that Hofer was their client was not a secret.

The trial court respected Hofer's invocation of attorney/client privilege and prevented the prosecution from asking any questions about the specifics of the other cases. The trial court did not err in allowing the attorneys to identify Shawn Hofer as the man they represented in the prior cases because that information was not "confidential communication."

The fact that an attorney testifies in a criminal case against a former client, over the objection of that former client, threatens to cast a shadow of impropriety over the judicial proceedings. The judge and prosecuting attorney in this case were precise and careful not to delve into privileged information. However, because of the sensitive nature of the relationship between attorney and client, we pause to urge that in future cases prosecuting attorneys should use other means to identify the defendant.

WUEST, HENDERSON, and AMUNDSON, JJ., concur.

SABERS, J., concurs in part and dissents in part.

SABERS, Justice (concurring in part and dissenting in part).

I concur on Issue 1 but dissent on Issue 2. The majority opinion provides in part:

The fact that an attorney testifies in a criminal case against a former client, over the objection of that former client, threatens to cast a shadow of impropriety over the judicial proceedings.... [B]ecause of the sensitive nature of the relationship between attorney and client, we pause to

urge that in future cases prosecuting attorneys should use other means to identify the defendant.

I believe that the procedure in question placed the defendant in a contemptuous light by pitting his prior attorneys against him. It was unduly prejudicial to the defendant and thereby gave the State an unfair advantage. If it is not against the letter of public policy, it is certainly against the spirit. I would hold that it is a clear abuse of discretion unless there were no other legal means to prove identity.